1
2
3
4
5

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

6  BEVERLY ANETTE RAINES, Principal, )
   Brighton School, **RONALD HOWARD,** )
7  Assistant Principal Aki Kurose, **SANDRA** )
   **BOSELY,** Former Interim Principal at )
8  Dunlap, **CHALICE STALLWORTH**, )   NO.   2:**09-cv-00203MAT**
   Elementary School Teacher, RONALD )
9  **PLEASANT**, Teacher at Cleveland )
   **MARK DELLA,** Former Deputy )
10 Security Mrg.  **DEMETRICE THOMAS-** )
   **DANZY,** Correctional Education )
11 Associate, at Interagency Academy, )
   **AUDREY WEAVER**, Security Specialist, )   COMPLAINT FOR DAMAGES
12 Security Specialist, Chief Sealth, **JACQUE** )
   **JOHNSON**, Security Specialist, Ballard )
13 & **MARCUS PERKINS,** Recently )
   Fired Custodian, )
14                                      )
                                        )
15            Plaintiffs, )
                                        )
16                                      )
   vs. )
17                                      )
   SEATTLE SCHOOL DISTRICT )
18 **NO. 1,** a municipal corporation, )
                                        )
19            Defendant**.** )
   _____ )

20
21

## I.    INTRODUCTION

22 1.    In 2004, the Seattle School Board passed a resolution.  Resolution No. 2004-7,

23 provided, in part, that "the 50-year anniversary of *Brown vs. Board of Education*, the

24 landmark United States Supreme Court ruling that racial segregation in public schools is

25

26 COMPLAINT FOR DAMAGES - 1

**LAW OFFICE OF BRENDA J. LITTLE, LLC**
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

unconstitutional; and…"despite five decades of progress, today there remain stark differences in academic performance between white students and students of color and marked differences in the quality of programs throughout our school district…".

2.      If children of color have not prospered in a governmental system, called Seattle Public Schools, then one can hardly expect that attitudes will automatically change when those very children become adults.  Many esteemed writers like Connel West and Randall Kennedy have wandered in the murky waters of race relations but not without costs.  Mr. West is strident unyielding in his very point when he wrote in his preface, "Black people in the United States differ from all other modern people owing to the unprecedented levels of unregulated and unrestrained violence directed at them.  No other people have been taught systematically to hate themselves—psychic violence – reinforced by the powers of the state and civic coercion – physical violence –for the primary purpose of controlling their minds directed at them …" "The basic aim of a democratic regime is to curb the use of arbitrary powers – especially of the government and economic institutions – against citizens".  Cornell West, *Race Matters,* at XIV – XV, (Vintage Books: A Division of Random House, Inc. 2001).[1]

3.      On the other hand, Randall Kennedy has provoked fierce condescension amongst the black intelligentsia for his beliefs.  Mr. Kennedy has been called a "sellout" by so many other blacks, that he wrote a book wondering out loud whether there can be a common agreement about how to define a "sellout".  Randall Kennedy, *Sellout: The Politics of Racial Betrayal,* (Pantheon Books: A Division of Random House, Inc. 2008).  Mr. Kennedy whose father was

---

1.  In all fairness to Mr. West he acknowledged "Racial progress is undeniable in American". …
"Yet the legacy of white supremacy lingers in the face of the very denials of its realities".
2.  Randall Kennedy is the author of NIGGER: THE STRANGE CAREER OF A TROUBLESOME WORD.

COMPLAINT FOR DAMAGES - 2

**LAW OFFICE OF BRENDA J. LITTLE, LLC**
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

a judge wrote in defense of Justice Clarence Thomas and argued that some of Mr. Thomas' arguments were well thought legal analysis of the Fourteenth Amendment.  Justice Thomas wrote, "As far as the constitution is concerned it is irrelevant whether a government classifications are draw by those who wish oppress a race or by those who a sincere desire to help those thought to be disadvantaged.

4.    Both of these Harvard Professors make good points, but Justice Thomas' legal analysis is absolutely correct.  And Mr. West's social, emotional and political observations are passionate and articulated well.   Even given Justice Thomas' legally correct and conservative viewpoint, he would agree that Seattle School District has willfully and intentionally waded into Mr. West's paradigm regarding governmental discrimination and its attendant 'psychic violence".

## II.    JURISDICTION AND VENUE

5.    This is an action under 42 U.S.C. §§1983, 42 U.S.C.§ 1981,   seeking damages as well as the award of counsel fees, for the deprivation, under color of state law, of rights guaranteed by the United States Constitution and the Fourteenth Amendments to the United States Constitution.

6.    This also is an action under Americans with Disabilities Act of 1990 42 U.S.C. §§ 12101 et seq, Section 504 of the Rehabilitation Act of 1973, as amended 29 U.S.C. § 794;  ADEA Violations 29 U.S.C. § 623(A)(1).

7.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), §1367(a).

COMPLAINT FOR DAMAGES - 3

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because all of the Defendants reside within this judicial district and all of the claims asserted by Plaintiffs arose within this District.

### III.    THE PARTIES

9.      **Principal Beverly Raines:**    Ms. Raines is currently the principal at Brighton Elementary School.  She is African American, very attractive, immaculate, well groomed, and she also has a smile for everyone and is loved by her school community and her peers.  Ms. Raines is only sixty-two years old but has the youth energy and passion for teaching children. "I still love what I am doing".  "My favorite activity is to sit on the floor with all the data from each student to design an educational program that is specialized for that particular student.    Former Superintendent John Stanford once said, "Children cannot learn from someone who does not love them".   Ms. Raines loves all kids; it's a passion not a profession. Ms. Raines considers Brighton Elementary School "The Bridge to Excellence".  Ms. Raines' vision is "Brighton is a school where all children are given the opportunity to receive a sound academic, social, and cultural education".

10.     For several years Principal Raines has collaborated her staff hosting a multicultural event that has included the Brighton School Community.   Brighton has a multitude of languages and ethnicities which are all included in the hosted multicultural event.

11.     Principal Raines is quite proud of her emphasis on professional development.  She understands that professional development is one of her strengths that serve the Brighton School Community well.  She has over the years had numerous facilitators train her staff with staff at Harvard University.  In Houston Texas, Principal Raines visited an extremely high

COMPLAINT FOR DAMAGES - 4

poverty school which was 100% American Black children.  These students were excelling academically.  Currently, her staff has received intensive training in reading throughout her tenure.

12.    Principal Raines has identified math as her next focus.  She provides an in-service opportunity for teachers 2 to 3 times per month, known as Professional Learning Committees patterned after the Rick Defore models.

13.    Principal Raines has served for several years on the PASS Board (Principal's Association of Seattle Public Schools, she is a SAESP Board Member,  Seattle Alliance Committee, Elementary Principals Association of Washington.

14.    Principal Raines seeks to gain new information and improve her skills by attending trainings/workshops on her own time.  As a school leader, Principal Raines seeks to work with staff open and honestly, problem solving, developing and maintaining a school environment that strives to give students an opportunity to be successful.  Each year the staff at Brighton attends a two day retreat and reviews student data, training on academic areas such as math and writing.  The retreat atmosphere allows staff to bond and build trust.

15.    This year district provided WASL training for students in the fourth grade.  Principal Raines expanded this opportunity by providing extra support for approximately 5 students in grades 3-5.

16.    Principal Raines has done a superior job of managing her students, her faculty, and her school community.  Principal Raines has direct objective evidence of her advanced skills: Principal Raines has written grants for her school between the ranges of 50k -250k.  These grants were restricted to professional development and student achievement.  One grant was

COMPLAINT FOR DAMAGES - 5

for a program called Reading First.   Ninety-five of her kindergartners met standards.

Principal Raines is a naturally born leader and has earned the respect of her teachers.   Last

year, she taught a campaign among her staff members to improve WASL outcomes.   On the

strength of Principal Raines personality and her passion for her students, Brighton Elementary

School made Annual Yearly Progress (AYP).[2]   Adequate Yearly Progress requires that every

public school completes three requirements annually. A requirement for the percentage of

growth is determined on a state-by-state basis.   A certain percent of all students are tested for

reading and mathematics; minimum annual target for meeting or exceeding standards for

reading and mathematics, and  all students meet the minimum annual target for attendance

rate for elementary.

17.      Principal Raines is a Seattle native and was a student in the district from K-12.   She

received her Bachelor's and Master's Degrees from the University of Washington.   Principal

Raines is a Danforth graduate.   Danforth is the principals program at the University of

Washington. She has been married 40 years, has two children.   All of them including the

father have attended Seattle Public Schools.

18.      Principal Raines created a program that attracts 60 or more volunteers in the school

each and every school year.   Principal Raines is still smiling after being harassed for the last

two years by her area director which came to Seattle from an educational testing company.

19.      **Ronald Howard**:  Mr. Howard has been the assistant principal at Aki Kurose for four

years.   Mr. Howard is a Black American male. Assistant Principal Howard has led an

---

[2] The No Child Left Behind Act makes provisions for schools that do not demonstrate adequate yearly progress. Those that do not meet AYP for two years in a row are identified as "schools in need of improvement" and are subject to immediate interventions by the State Education Agency in their state. First steps include technical assistance and then, according to the Department of Education, "more serious corrective actions" occur if the school fails to make Adequate Yearly Progress.

COMPLAINT FOR DAMAGES - 6

interesting and unique professional career. He attended Pasco Senior High School, class of 1970 and played three sports football, basketball, and track. Assistant Principal Howard received a full scholarship from Seattle University and played four years of college basketball. Assistant Principal Howard graduated in four years with a bachelor's degree in education.  He signed on as a free agent with Dallas Cowboys, and played for two years.  Assistant Principal Howard played in Super Bowl X.   He had the distinct honor of being the first player selected in the expansion draft to the Seahawks, and played for three years and then he retired. He worked 10 years as an Iron Worker and then retired.  Naturally, he has educated young black youth through coaching high school football and track and has done this for seventeen years.

20.    Assistant Principal Howard's educational philosophy consists in part of the following: "Lastly, in order to excel in the field of education, one must have a compelled spirit to serve. As a classroom teacher, I relished in the gains of my pupils'. The individual success of each student was such a soothing feeling for me. It has been my life-long dream to serve as an educator. Education is the most passion-driven form of human altruism that exists, in my humble opinion. Today, my sheer covet drives me to be the best educator I can be. Through modeling the proper civic and academic example; I have the capacity to be a change agent. Education has the ability to transform a human life, for good. I encourage all to have a philosophy of practice or look into developing one. Being a reflective practitioner creates ground for more progressive/forward thinking. I truly believe all can succeed, given support and cultures of high expectations where leadership is transparent and adaptive".

COMPLAINT FOR DAMAGES - 7

21.    Last year, Assistant Principal Howard was told by Ruth Medsker, a white woman, that he only had a provisional position as Assistant Principal.  Ms. Medsker also told Mr. Howard if he wanted to be an assistant principal it would be in another district.  The undersigned attorney appeared and his position was correctly saved.   Ms. Medsker is now retaliating against Mr. Howard without statutory authority.   She has created an atmosphere of fear, intimidation, and hostility and culture of fear. Mr. Howard seeks Court intervention so the discrimination will stop.

22.    **Sandra Bosley**:   Sandra Bosley, a Black American woman, grew up around educators who were family members. Ms. Bosley is married to a very supportive husband. By simply reviewing her record, Ms. Bosley is someone who normally achieves whatever goal she has for herself, she is only 50 years old and at the this lawsuit Ms, Bosley is going to ask the jury to return to her school district a principal,

24.    Ms. Bosley was the House Administrator at McClure Middle School, Assistant Principal at Dunlap, then interim principal when her supervisor a Black American male was pushed out of Dunlap by the Superintendent with a very minute amount of money and a signed agreement that he would never apply for any position in the district.   He has never been back inside a schoolhouse.  Larry Jacobs her supervisor wrote "Ms. Jackson has done an excellent job in her first semester at Dunlap under very trying circumstances. She now has a wonderful opportunity to demonstrate her leadership skills as acting principal for the second semester.  This evaluator looks forward to providing as much support as possible to ensure the school's success through the transformation process.  *Mid-year Evaluation Report, February 11, 2002.*

COMPLAINT FOR DAMAGES - 8

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

25.    As Acting Principal of Dunlap Elementary School half year assignment: January-June, Ms. Bosley (1) Supervised and evaluated staff of 70 based on District's expectations, (2) Provided guidance and counsel to faculty regarding methodology, classroom organization, and instructional materials to encourage, innovation and to improve instruction (3) Provided leadership in discussions on academic achievement and data analysis (4) Engaged staff in the completion of the Transformation Plan, (5) Collaboratively facilitated the preparation, implementation and monitoring of the building Quarterly and annual budget in alignment with the Transformation and Staffing Plan, (6) Maintained a safe, orderly, effective teaming environment and positive school climate, (7) Facilitated/communicated with parents on appropriate student matters, (8) Recognized/celebrated high performing staff and students through written media, staff meetings, Dynamite Dolphin Assemblies, and Family Nights, and mentored new Assistant Principal.

26.    On April 15, 2001, former Superintendent Joseph Olchefske sent a letter to the parents of Dunlap's announcing that he had unilaterally appointed a white male as principal of Dunlap even though he had promised to include the community, families, and interested parties.   Mr. Olchefske informed the parents that Mr. Greg Imel would accompany him to Family Night on April 25, 2001.  On Family Night, the students perform for their parents and community.

27.    When Mr. Olchefske arrived at the school there was the palpable scent of anger in the air. A Black American male parent commandeered Mr. Olchefske to have a private conversation with him.  Larry Jacobson, Ms. Bosley's immediate supervisor, asked her what that parent was saying to the Superintendent.  Ms. Bosley replied that she did not know.  At

COMPLAINT FOR DAMAGES - 9

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

that point, a Black American female stood up, took the mike, and started preaching to the crowd and the children how wrong it was for the Superintendent to hire someone without any input from the families or community or staff.   The Superintendent broke away from the man ran over to Ms. Bosley and told her to go over and take the mike from the second woman who wanted to be heard.  Ms. Bosley very kindly told him, "I think you should listen to what they have to say."  "I want to".

28.    Mr. Olchefske took the mike away from the second woman and chastised the crowd by telling them that Family Night was not a place to discuss their concerns about the new principal he had appointed.  Even though, he had sent a letter to the families on tax day and told them he was bringing business into their pleasant family night.

29.    Acting Principal Bosley's fate was sealed that night in the educational system in Washington.  Mr. Olchefske retaliated against Acting Principal Bosley quickly and mercilessly. He told her she was not a team player and certainly not a leader in his eyes.  Mr. Olchefske stripped her of everything including a permanent placement.  He sent her to Rainier Beach as an on call substitute teacher.

30.     Ms. Bosley tried to explain to him she was being a leader to her students first and to their parents.  Mr. Olchefske had marginalized the entire Dunlap Community and he wanted to further humiliate, control, and eviscerate the parents in front of their children.   Acting Principal Bosley prevented a mini-riot but the Superintendent could not see that because he did not see the parents as important.

31.    In direct contrast, Mr. Olchefske wrote a letter to which confirmed, "Starting May 4th, an interview teamed composed of Blaine staff and parent representatives will participate in

COMPLAINT FOR DAMAGES - 10

1   site interviews of the final candidates  The American Black woman, over 40 was not being

2   asked to stay on as principal.  The demographics at these schools are the difference night and

3   day.

4   32.     After her experience at Dunlap, Ms. Bosley decided to spend $26,000.00 to become a

5   Danforth graduate.  The district has always promised that if you were  a Danforth graduate

6   you would always be placed as an administrator before all others.  That is not how it actually

7   turned out for Ms. Bosley.   Ms. Bosley has received data just recently from one of her inside

8   supporters.  She crunched some numbers but ultimately it will be her forensic economist that

9   will present the statistics to the court.  The district's record should show:  There were 32

10   people in Cohort 14.  Of those 32 people, 29 got a leadership job (ex: Principal, Assistant

11   Principal, Coach, House Administrator, Dean, Head Teacher, and Program Manager).  Of

12   those 29 who got jobs, 6 were hired by Seattle School District.  Of those 6 hired by SSD, at

13   least 1 was Black,   23 of those 29 got jobs in other school districts.  The names listed in the

14   last column are the ones who did not get a job in their district (ex: some elect not to apply

15   until a later year).  SSD stands for Seattle School District.  Seattle School District hired at

16   least one Black American from Danforth every year except her year (2004) in a leadership

17   position (they purposely didn't hire her). Seattle School District hired 2 over the age of 40

18   from Danforth within an 8 year period (2001-2008) in a leadership position.  Seattle School

19   District hired a total of 55 between 1999-2008 in a leadership position, of which at least 9

20   were African American and 2 were over the age of 40.

21

22   33.     Ms. Bosley fought her way back to get on track for her goal of becoming a principal.

23   She was given House Administrator's position at McClure.  As McClure's House

24

25

26   COMPLAINT FOR DAMAGES - 11

Administrator, Ms. Bosley (1) Supervised student and school, activities, (2) Participated in student disciplinary action, (3) Facilitated/communicated with parents on appropriate student matters,  (4) Maintained liaison between school, staff, and parents in matters relating to student performance and school policy, (5) Facilitated//created/reviewed as the 504 Coordinator, 504 Plans with parents and teachers, (6) Maintained liaison, as the Arts Infusion point person, between school, staff, parents, and outside artists in scheduling the Arts Infusion Program in the classroom, (7) Monitored student attendance and meet with parents to create attendance contracts, (8) Monitor" as the Sports coordinator, coaches to ensured paperwork was current, that rules and regulations are followed, and provided important schedule/meeting information, and (9) Supervised, as the Ski Coordinator, 36 students on ski/snowboard trips to Summit West.

34.     Ms. Bosley's principal begged the current administrator to allow Ms. Bosley what she had rightfully earned.  Ms. Bosley's principal wrote:  "In her role as a House Administrator, she has gone above and beyond the traditional scope of this job. I have been thankful to have such an experienced individual as Sandra here at McClure during my first year. She has helped to make the transition to McClure a smooth one. I have been able to count on her experience and expertise throughout the year. Sandra has overseen our athletic program; our Arts Infusion program; our Ski Program, and a host of other program and activities that have contributed positively to McClure Middle School.  Sandra is very intelligent and extremely committed. Sandra has consistently demonstrated her leadership abilities and her capability to maintain a professional standard of conduct at all times."

COMPLAINT FOR DAMAGES - 12

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

35.    "As our 504 coordinator Sandra coordinates all of our meetings and maintains all of the paperwork necessary for the student files. She is in constant contact with parents and teachers to make sure that everyone has the information needed and above all, that student needs are being met. Because she coordinates several programs including our athletic program she needs to be able to demonstrate superb organizational skills, and attention to detail; which has been done throughout the school year. Sandra has truly been a positive member of our Administrative team."

36.    "Sandra shows commitment to the building and the administrative team; and her focus has been to make our school the best possible place for students to grow and be successful. She is and always has been open to feedback and learns quickly. Sandra has shown the resourcefulness, energy and the dedication necessary to become a true leader.".

37.    Finally, Ms. Bosley's philosophy for teaching "The educational (instructional) leader boldly leads the academic program, constructively evaluates teachers leading to the improvement of teaching and learning, and assesses results. This leader reflects on the school's culture and practices, and promotes the importance of inquiry, constructive dialogue and decision-making as a professional responsibility of the school/community team to improve student achievement. They provide collaborative time for grade level/subject matter teaming and staff development for continuous instructional improvement engaging in different kinds of teaching and learning.

38.    The exemplary leader sets the tone for creating a culture that supports collaboration, articulation and powerful teaching and learning that will lead towards closing the academic achievement gap and raising test scores. The exemplary leader also

COMPLAINT FOR DAMAGES - 13

recognizes, creates opportunities, and supports their staff's involvement in school improvement and organizational change. The exemplary leader, in short, is one who others respect and want to follow. They are able to have fun and never let a day go by without laughing. They are not only proactive and productive, but ask, guide, delegate, communicate, encourage, and take risks. They are a visible, confident, and caring positive role model. Such a leader is also energetic, creative, a listener, well organized, flexible and goes that extra mile to make a difference in the lives of children and adults alike. They are also an effective orator, writer, monitor, disciplinarian, and mentor. Pride does not keep this leader from seeking help when needed, and criticism is received in a constructive manner.

39.    But above all else, an exemplary leader has an inner awareness, is trustworthy, respectful, and fair in everything that they say and do across all ethnicities, genders, and age, and carries themselves in a professional manner at all times.

40.    Ms. Bosley stopped being interviewed after the Family Night at Dunlap.   Each year, Ms. Bosley routinely sends out 15-30 applications to other school districts including one in Atlanta.  She has never been interviewed the well has been poisoned.

41.    **Chalice Stallworth:** Ms. Stallworth is a teacher at the Black African Academy.  She is a Black American woman who loves teaching and community service.  Ms. Stallworth and her mother and father were known for their generosity and philanthropic hearts.   Ms. Stallworth was a hand on teacher. Her philosophy includes "I desire a work environment that allows for; occasions to collaborate and work in teams to produce effective academic action plans. I hope to have challenges and opportunities for learning and personal growth. I expect

COMPLAINT FOR DAMAGES - 14

to work with co-workers who show respect for one another, work hard together, and demonstrate respect for the lives and cultural beliefs of each client".

42.    Ms. Stallworth believes it is her responsibility to coordinate remedial education services and provide interventions for referred students; to provide diagnostic assessment and educational action plans for school aged children and their families; to assist teachers in providing creative, meaningful and developmentally appropriate academic instruction; to assist individuals in discovering their giftedness and their unique style of learning and assist them in overcoming the challenges associated with their learning style or giftedness; to assist families in connecting with community resources and provide guidance in creating and maintaining an enriching home environment; to provide workshops on parenting, child development and techniques for teaching the unique learner.

43.    Ms. Stallworth received a contract in August which was signed by the Superintendent but the district made a unilateral decision to breach the contract, thus she has not been paid.

44.    **Ronald Pleasant:** Mr. Pleasant is a Black American male who supervises a special education classroom without an aide for some of the most behaviorally (anti-socially) challenged Black American boys at Cleveland. The room is so small that these violent students, Level I, Level II, and Level III, reacted negatively within the confined space by hitting each other. These students will commandeer the classroom to tell sexual stories about "golden showers" and "masturbation". Even though these special education who are not provided services to ameliorate their behavior and provide them social norms, Mr. Pleasant still attempts to send most destructive students out of the classroom, the principal sends them right back to his classroom.

COMPLAINT FOR DAMAGES - 15

**LAW OFFICE OF BRENDA J. LITTLE, LLC**
524 First Avenue South
Seattle, WA 98104
(206) 622-2458
(206) 624-5381(Fax)

45.    In addition to the small room, Mr. Pleasant has four very old computers for the children which he cannot get them functional for his students after many requests.

46.    Mr. Pleasant has been chronically underpaid during his seven years and he has been treated differently than others.  The district refuses to pay for any professional development. He was told that if he wanted professional development he would have to pay for it himself. Mr. Pleasant is outspoken always asking "where the money is going??  The money is not going to his students because "he has been directed not to include anything in the IEP that might cost additional dollars, although the district obtains special dollars because of their status".    Hence Black American boys in his class "do not receive appropriate specialized services so these maladjusted boys multiply and multiply".

47.    Mr. Pleasant's computer has been tampered with and all of his "emails are routinely reviewed".    Because he is passionately outspoken about all students but particularly those that look like him, the district has restricted the areas that he can log onto.  One day his principal, Princess Shariff called him into the office and started screaming and yelling at him at the top of her voice, she screamed among other things "look at you sitting there looking so pitiful".  She screamed "I am not as not going to pay you."

48.    Mr. Pleasant had an interesting childhood.  His parents were married for 60 plus years and together they had 20 children, eleven boys and eight girl, and only one set of twins which Mr. Pleasant is one of the twins. He was born in Yakima, WA.  Mr. Pleasant has two master's degrees but "lives in fear everyday because of the systematic racism at the district".

49.    **Mark Brandon Della:**    Mr. Della grew up in Seattle with his eight other Filipino brothers and sisters.  He has had a long career in community service working his way from

COMPLAINT FOR DAMAGES - 16

the bottom up. Among knowledgeable persons Mr. Della is considered very skillful and very knowledgeable. Mr. Della has served in a variety of community services positions. Mr. Della and his brothers have made many accomplishments on behalf of the children in this community. Those accomplishments literally fill five pages. For example, long before his former two supervisors were his supervisors, Mr. Della was the Administrator, Multicultural at-Risk Intervention Services Unit (MARISU).

50.     In this position, under the supervision of the Assistant Superintendent of Dr. Collins and Dr. Olvin Moreland, Mr. Della was the frontline manager of the Multicultural and At-Risk. He hired staff who provided services to high risk and at risk students. Mr. Della developed skills in drug and alcohol prevention and intervention services. Mr. Della **was one** of the forbearers of actually constructing a strategy for dealing with gangs without use of the juvenile justice system. He supervised the Lead, Outreach Intake Unit with Dr. Collins, Assistant Superintendent. In 1988, Mr. Della was one of a select group of men who started to fashion programs for at-risk youths of color that interfaced with the school district. All programs now can be traced back to the solid foundation laid by Mr. Della and other men who foresaw that the at risk youth was not an anomaly but a permanent fixture in this city's schools. While many citizens were reading about this new brand of youth, Mr. Della was in the trenches developing programming that is still being used today by many agencies.

51.     Mr. Della has worked with Ron Sims, Theresa Fujiwara, the City's Human Resource Department, and a host of trustworthy public officials.

52.     After 26 years, Mr. Della was fired in a very short and terse letter by someone he did not know. Don Kennedy wrote the letter that fired Mr. Della but told him they were

COMPLAINT FOR DAMAGES - 17

restructuring so he could apply for one of the open jobs.  The district rated him number three but skipped over him and offered the job to candidate four.  The letter from Don Kennedy was sent after the Director of Security called him at a high school he was visiting and assured him he would be appointed to one of the open positions, a past practice for the district.

53.     Because he had not notice and no unfavorable performance evaluations, Mr. Della was caught completely off guard and he lost everything a man could lose. His wife's depression escalated and she has started to drink, his home, his credit, his standing in the community was lost because it was published to many people that he was incompetent and then he was fired.  When he found out that he was not going to get one of the three new positions, the was in the process of adopting his wife's granddaughter, after he was fired he couldn't pass the home study or adoption, his wife's flesh and blood was adopted by strangers.   Mr. Della is in a fragile emotional state at this time.

54.     **Demetrice Thomas-Danzy**: Ms. Thomas-Danzy is a beautiful youthful looking Black American, 42 year old woman with a deeply held love for her son who attended the Seattle School District, the children she taught and shoes.  Ms. Thomas-Danzy is a single mother who raised a college educated son.  Her own mother passed away when she was just three years old and she was born with Asthma which created the need for her current 504 Plan.  Ms. Thomas-Danzy was determined not to allow her adversity to stand in the way of her being a productive citizen.  Before applying to the district, Ms. Thomas-Danzy worked for both the Seattle Police Victim Support Team as a Volunteer and Bellevue Police Department as a 911 Dispatcher.  She is very intelligent and unyielding in matters of truth and honesty.

COMPLAINT FOR DAMAGES - 18

55.    Ms. Thomas-Danzy has an outstanding reputation among her colleagues. A teacher wrote in 2007, "I worked along side Demetrice at Southwest Interagency of the Seattle School District for two years. She held the title of Correctional Educational Associate, but due to the environment and situations that arose during her tenure at the site, she willing took on many other roles to see the students she worked with succeed".

56.    He goes on to further write, "During my time with Demetrice I came to admire her for her many valuable qualities, and regarded her with evermore respect.  Very much a team-player, Demetrice was always easygoing yet passionate in her work.  Her good people skills allowed her to an influence not only in her student's lives but also the lives of their guardian with whom she spoke.

57.    Another teacher, wrote, "This is a letter of support for my former co-worker Demetrice Danzy with whom I worked with at Southwest Interagency Academy…" "Demetrice Danzy and I shared a small office, so we learned a lot about one another in a short period of time.  While employed as a first year teacher at Southwest, I had the pleasure of watching Demetrice works with delinquent at-risk youth, some of the most socially and academically challenged students in Seattle Public Schools.  When students were disruptive, I was often in awe of how insightful Demetrice was problem solving on the spot.  Ms. Danzy is resourceful, and solution oriented person, which, made her incredible effective when assisting our students with positive decision making skills"… Dian and I had no contact with the low-level reading group during reading period. "Demetrice was scheduled as the sole instructor for Southwest's low level reading group".

COMPLAINT FOR DAMAGES - 19

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

58.    Going back to the beginning, in 1999, Ms. Thomas-Danzy became employed by the district as a Correctional Education Associate ("CEA"). She belongs to the Seattle Education Association (SEA) because she is a paraprofessional. Ms. Thomas-Danzy worked at Interagency Schools for nontraditional with a difficult population of students, and during the course of her ten year tenure, she was directed by her immediate supervisors to teach special educational students substantive courses, reading, language arts and behavior modification, which is recorded as personal growth on official transcript.  On numerous occasions over the years, Ms. Danzy reported to several upper level administrators that she was being required to teach, award grades and credits for students attending Southwest Interagency school.

59.    Ms. Thomas-Danzy's was nominated for the Outstanding *Teacher's Honor Roll* Award out of Philadelphia by one of graduate students.  The organizers wanted to come to her school at Southwest to interview her, but Ms. Thomas-Danzy declined.  It was during this time that Ms. Thomas-Danzy began to realize that even though she put her heart, soul, and passion into teaching her children; she was ultimately allowing the Seattle School District to continue to cheat them of the education they statutorily deserved by not coming forward formally and publicly in spite of her fears about losing her position and being retaliated against.  It was at that point, Ms. Thomas-Danzy summed the courage to file a formal grievance in spite of her emotional anxiety regarding her job security opposed to going to individual administrators.

60.    Therefore on March 15, 2007, Ms. Thomas-Danzy filed an official grievance 06-07-0017, against the district. The grievance alleged violations of the SEA\ Paraprofessional Employee's Collective Bargaining Agreement.  The specific violations included Article 1 Section B and B6, Article Section C2, Article X Section Fl.

COMPLAINT FOR DAMAGES - 20

61.    Ms. Thomas-Danzy was not prepared as to how she would be treated.  She really believed that due to her not being in trouble; in the past that other upper level Management would have appreciated knowing about this inequality regarding our Interagency students lack of receiving a free appropriate education they desperately needed and deserved,  but she was dangerously wrong.

62.    On April 5, 2007, Ms. Danzy had a step one hearing for grievance 06-07 0017. Before the step-one hearing with Ms. Thomas-Danzy, Cindy Ortega the principal asked if she could conduct an employee evaluation of Ms. Thomas-Danzy.  She promptly requested Union representation, in accordance with the Weingarten Rights, but, she was denied by the principal, Ms. Ortega.   Of course the evaluation was an unsatisfactory evaluation, accompanied by a formal letter of reprimand, which prompted a performance improvement plan.

63.    Ms. Ortega's conduct was retaliatory and violated Article III, Section G4 of the collective bargaining agreement. TJ1C Principal's conduct also violated Artic1e IH, Section G3.On April 17, 2007, Ms. Danzy filed a grievance alleging that Ms. Ortega violated the "CBA", when she issued the letter of reprimand and a performance improvement plan which is usually given after the performance evaluation.   On April 25, 2007, Ms. Thomas-Danzy took a three-week stress leave of absence, pursuant to her Doctor's recommendation.

64.    But that was just the beginning, Ms. Thomas-Danzy was constantly sent home, she had a series of different positions, she began to receive these mean spirited letters and emails from Misa Garmoe, Cindy Ortega, Faye Chess-Prentice, and  Sue Means,.  Their letters and emails were harassing and intimidating.  Misa Garmoe whom is mentioned above, placed Ms.

COMPLAINT FOR DAMAGES - 21

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

Thomas-Danzy at Wilson Pacific Interagency to accommodate her 504 disability. She actually felt safe there considering all the surrounding circumstances . Since Ms. Thomas-Danzy loved the placement and her supervisors knew it, she was informed by the Wilson Pacific Administrative Assistant to vacate the building immediately per Cindy Ortega and Misa Garmoe. The Assistant told her to go home until further notice. By the time Ms. Thomas-Danzy Shockingly, Misa Garmoe the Human Services Manager made an admission in an email that Ms. Thomas-Danzy was never notified that when the three administrators made her leave her position it was unpaid. Ms. Thomas-Danzy sent an email to Faye Chess Prentice in reference to two issues: the site placement, wages, and the attendant hostile environment. Ms. Chess-Prentice that the district's theft of 257 hours would not be restored regardless of what Ms. Garmoe wrote in her email.

65.    Ms. Thomas-Danzy is being treated hostilely but she cannot survive without that job because of the statistics that show over 40 workers seldom get hired. Ms. Danzy has approximately 300 hundred emails where she kept begging someone anyone to stop the harassment and retaliation.

66.    **Audrey Weaver**:  Ms. Weaver is a 45 year old vibrant Black American woman. She has worked as a security specialist for 26 years.  Ms. Weaver is very meticulous about everything, she normally arrived at work every day an hour early and she was always the last to leave with Ms. Lupe Barnes, an assistant principal.  Ms. Weaver would constantly monitor the hallways and on many occasions she was the only person to break up fights between girls and boys.  Ms. Weaver had two other security specialists working with her but they were never around when the hard work had to be done.

COMPLAINT FOR DAMAGES - 22

**LAW OFFICE OF BRENDA J. LITTLE, LLC**
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

67.    Ms. Weaver has serious mental and emotional disability. She has consecutive panic attacks which are frightening to watch.  She talks incessantly and she cannot retain many details in her mind.  Principal John Boyd, a white male, started to harass Ms. Weaver because of her disability.

68.    On Monday May 19, 2008, her supervisor Pegi McEvoy should have accommodated her with a transfer, immediately after the mediation.  The need for the mediation meeting arose from a conflict of interest between John Boyd and Ms. Weaver. This conflict has reduced her level of trust for him and caused a less secure feeling of support from John Boyd. There have been security specialists in the past and present that have been accommodated and have been moved out of similar situations. Ms. Weaver felt intimidated and she felt like she was being treated unfairly in the work place. With these facts at hand, Pegi McEvoy decided to keep her in this hostile environment. The 504 (accommodation request) had been submitted long before the situation occurred" The 504 was submitted in February 2008. Ms. Weaver did not receive a response in regard to its submission until she was placed on administrative leave on April l, 2008.

69.    Ms. Weaver had two preexisting doctors who she cannot function without.    Andy Sands, MD, wrote Dear Ms. Little: I have been the treating psychiatrist for Ms. Weaver since I first met her July, 11. 2007.  I feel that Ms Weaver should be on long-term disability because of' chronic depression and anxiety. She has panic attacks and a sleep disorder in addition to periods she cannot cope…. Her mental status can be quite – but it is often depression, and anxious…Please let me know if I can be of further help.   May 30, 2008

COMPLAINT FOR DAMAGES - 23

70.    Ms. Weaver's therapist Jeffrey Morrison, MA wrote, 1 am currently providing mental health counseling to Audrey Weaver.  In my professional opinion she is unable to perform her job duties at this time due to anxiety and depression. It is unclear how long she will be unable to work for the Seattle School District or the City of Seattle Department of Parks and Recreation. I will continue to work with her and will reevaluate her job readiness in 60 days. June 6, 2008.

71.    The district completely ignored her medical doctor and therapist.  In stead they took the opinion of an unknown doctor to Ms. Weaver, who talked to her for less than 50 minutes and he did not perform any tests.

72.    Finally, the district after many consecutive panic attacks moved Ms. Weaver to Madrona K-8 where an 8 year old boy told her he was going to blow her mother..king head off and kill all the mf's in this school.  Ms. Weaver was attempting to call the police because it was a serious threat.  The principal would not allow it because the people in the neighborhood do not like the police called.

73.    **Jacques Johnson**:  Mr. Johnson is a security specialist and he is a Black American male.  Mr. Johnson is outspoken when he believes that children might be in danger.  He is astute enough to go up the chain of command but he has to eventually write a letter to the Board of Directors.  His letters are not accusatory but simply relay factually information about safety issues. Mr. Johnson has interacted with the undersigned attorney for about two years. He is very shy.  What anyone can discern is that he lives his life in fear of being fired, of being fired for no cause.  Mr. Johnson has had a no cost 504 for years basically not staying

COMPLAINT FOR DAMAGES - 24

outside too long when there are abnormal levels of pollutants in the air.  Mr. Johnson has a

doctor's statement which the district refuses to honor.

74.    **Markus Perkins:**    Mr. Perkins is still getting a little frustrated by the rain loves it

here.  He is a big sports fan and really loves his Oklahoma Sooners (old habits I guess).   Mr.

Perkins enjoys walking and meeting people.  He is really people oriented and loves meeting

people from lots of different places and getting to know their stories and sharing his. Mr.

Perkins especially loves being around children and young people.  He has always taken

particular pride in being able to spread a little wisdom to some of the kids he encountered at

one of the many schools he has worked in.  On more than one occasion we have run into kids

that attended a school where Mr. Perkins worked that still remember him, came up to say "hi"

and thank him for something he may have told them that became meaningful.  This type of

encounter gives Mr. Perkins unbelievable satisfaction that in some small way he may have

helped some young person think about something a little differently or given them a tool that

they might use later in life.

75.    Mr. Perkins is a custodian and he is a Black American male. Mr. Perkins is a lively

man and probably enjoys staying home as much as working.  Mr. Perkins has worked for the

district for 26 years.  He has some character traits that dated back to 1982, yet the district

never took any aggressive actions.  The district did not fire him although it tried once and was

overturned at Step I.  Mr. Perkins has some bad behavior write ups but not as many as the

good write ups he has praising his worth ethnic.

76.    Mr. Perkins has had excellent to satisfactory evaluations, he works hard when he

comes to work.  This has been occurring for 26 years.  When the district discovered he was

COMPLAINT FOR DAMAGES - 25

scheduled for knee surgery on February 10, 2009, it fired him on January 13, 2009 for many of the same habits he has had over the years.

77.    However, the district did something it normally did not do; it gave Mr. Perkins his worst evaluation ever.  Mr. Perkins believes the reasons for firing him are a pretext because the district did not want to provide reasonable accommodations or make some other arrangements for his recuperation.   Since he cannot work because of the surgery, Mr. Perkins cannot receive unemployment.

## IV.    CAUSES OF ACTION FOR ALL PLAINTIFFS

78.    Because of the longstanding  pattern and practices of discriminatory treatment based upon color by Seattle School District No. 1;   Plaintiff Raines, Plaintiff Howard; Plaintiff Bosley; Plaintiff Stallworth; Plaintiff Pleasant; Plaintiff Della; Plaintiff Thomas-Danzy; Plaintiff Weaver; Plaintiff Johnson, and Plaintiff Perkins are suing Seattle School District No. 1 to obtain policy changes, Federal oversight, and remuneration for their injuries,  and to stop the separate and unequal education for children of color and disabled children. Separate is acceptable but unequal is not.

### A.  FIRST CAUSE OF ACTION
### DEFENDANT SEATTLE SCHOOL DISTRICT
### INSTITUTIONAL (SYSTEMIC) RACISM

79.    In furtherance of Defendant Seattle School District willfully and intentionally actions engaging in a pattern and practice of employment discrimination against African Americans and people of color perpetuate the effects of past racial and ethnic discrimination.

80.    In Defendant Seattle School District's attempt to control through promoting an atmosphere of fear and intimidation, it damaged many more employees listed above:

COMPLAINT FOR DAMAGES - 26

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

Principal Raines cannot sleep and her enjoyment of life has diminished; Assistant Principal Howard cannot focus on his needy students, his home life is suffering, and he is just plain frightened that the district will end his career before he accomplishes what he set out to accomplish; Ms. Bosley has taken a leave because her medical doctor/psychiatrist opined that she has severe depression, she can nearly get out of bed and abhors discrimination.

81.    Teacher Pleasant has no enjoyment out of life because he is treated with utter disrespect, he is especially troubled that he has been told not to expend monies of Black American boys from their special educational allotment; Teacher Stallworth has not been paid even though the law requires it and she has disabilities that should have been accommodated; Ms. Weaver was best security monitor, she started to be targeted by Principal Boyd's hostile demeanor, people who love her watched her descend into a place where no one ought to be; Mr. Della lost everything including his granddaughter and the position they took from him is still not filled, there are too many Dellas;  Mr. Johnson lives in great psychological fear; and gets the tiniest of accommodation with demeaning discussion,  and even though Mr. Perkins exhibited the same habits for 26 years when the district discovered he was having his knee replaced it immediately fired him in violation of ADA and Rehabilitation Act of 1973.

82.    Demetrice Danzy is under a tremendous amout of stress relying on prescribed medication to get her through the hostility. Working outrageous hours and living in continent fear of losing job or being sent home without reasonable cause. Ms. Danzy has become extremely withdrawn from famliy member, friends and son. Demetrice Thomas-Danzy was a stellar employee with excellent performance evaluations throughout her tenure, which it

COMPLAINT FOR DAMAGES - 27

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

caused her to believe that this would be her shield when she went public with the fact that she had been teaching, students of color, special education students, without endorsement or teaching certificate.

83.    Most entities would not make statement against its own interest.  For the last five years,  been telling everyone who would listen that the district was fraught with institutional racism.   For example, their director of equity and race wrote on her website "In response to the numerous concerns voiced regarding definitions posted on the Equity & Race website, we have decided to revise our website in a way that will hopefully provide more context to readers around the work that Seattle Public Schools is doing to address *institutional* racism..."   "*It* is our hope that we can explore the work of leading scholars in the areas of race and social justice issues to help us understand the dynamics and realities of how racism permeates throughout our society and use their knowledge to help us create meaningful change.

84.    The Plaintiffs have met their first burden of proving "institutional racism, with direct and not hearsay evidence.


**B.  SECOND CAUSE OF ACTION**
**DEFENDANT SEATTLE SCHOOL DISTRICT**
**HOSTILE WORKING ENVIRONMENT, SECTION 1983**

85.    Hostile working environment must show the existence of a genuine factual dispute as to whether a reasonable American Black male or female would find the workplace so objectively hostile as to create an abusive working environment and whether the entity failed to take adequate remedial and disciplinary actions. Whether in light of all circumstances the

COMPLAINT FOR DAMAGES - 28

harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

86.     Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

87.     **Principal Beverly Raines:** Defendant Seattle School District conspired and acted jointly and in concert with multiple upper level personnel and different departments, under color of state law or authority; with a discriminatory intent, and subjected Plaintiff Raines, a citizen, to a deprivation of her rights, privileges and immunities, to wit, due process, equal protection of the law or equal privileges and immunities and that overt acts were done pursuant to the joint actions of multiple departments and the upper level manage team. Defendant Seattle School District's overt acts moved the conspiracy from the area of thought and conversation into action that caused the civil injury which resulted in damage to Plaintiff Raines. The following are overt acts of the Defendant Seattle School District.

COMPLAINT FOR DAMAGES - 29

88.    Principal Raines has been a pleasant and welcoming fixture at Brighton Elementary School for 13 years. Her staff, student, and families are her loyal supporters.  Principal Raines wrote the $250,000 reading grant which assisted 95% of her kindergartners to read within standards.

89.    In furtherance of the objective of their joint actions, Defendant Seattle School District, both acting under color and pretense of the statutes, ordinances, customs and laws of the State of Washington and in a willfully, malicious, intentional, and discriminatingly misused their authority and that of its  subordinates.

90.    Seattle School District willfully acting in concert with each other by themselves, its agents, servants and subordinates, each and all procuring, aiding and encouraging the other did purposely and systematically and intentionally discriminate against Plaintiff Raines and subjected her to disparate treatment, because of her age and sex, in the following overt acts which were not privileged or compelled by law.

91.    Maliciously and intentionally created a hostile working environment for two years, Principal Raines has been harassed by her director, Patrick Johnson unrelentingly. To wit, two years ago, Director Johnson walked up to Principal Raines and demanded to know when she was retiring.  She said maybe next year but in her heart she wanted closure on her project. Principal Raines said during an interview, "I used to love what I was doing but Patrick has taken all the enjoyment and passion out of being an educator".

92.     Five days into this current school year, Director Johnson approached Principal Raines and said "When are you going to retire?   Principal Raines replied maybe at the end of this year".   Director Johnson said, "Yea, Right, You said that last year".

COMPLAINT FOR DAMAGES - 30

**LAW OFFICE OF BRENDA J. LITTLE, LLC**
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

93.    In furtherance of the conspiracy, after this conversation, Director Johnson has constantly visited the school in plain view of everyone, criticized a kindergarten teacher so badly that she resigned and within a short period she became ill and died immediately and walks around like he is doing something at the school.

94.    In furtherance of the conspiracy, the conspirators were acting jointly and harass, intimidate, and create a hostile working environment for Principal Raines.  To wit,   Director Johnson came to her school and was confrontational with Principal Raines, and he found out she was no pushover.  The next day, Superintendent Goodloe-Johnson's secretary called to tell Principal Raines that the Superintendent would be at her school the next day.

95.    In furtherance of creating a hostile environment, Superintendent Goodloe-Johnson, came and went without saying much, but the point was made and that point was Director Johnson could manhandle Principal Raines and she could not defend herself.

96.    In furtherance of the objective of the aforesaid conspiracy and in retaliation, Superintendent Goodloe-Johnson directed that Director Johnson to put Principal Raines on a performance improvement plan.   Mr. Johnson has indicated to her in so many ways she is going to fired.

97.    In furtherance of the conspiracy to oust Principal Raines based upon her age and sex and in willful disregard of former President Bush' No Child Left Behind Act where objective measure trumped subjective biases, Director Johnson is attempting to fire Principal Raines using the old fashioned method of writing immeasurable ill founded criticisms of her "alleged" failures.  Principal Raines took a group of children who should not succeed and those children succeeded, the school made AYP–Annual Yearly Progress. With this type of

COMPLAINT FOR DAMAGES - 31

management how could Principal Raines be incompetent?  Two days ago, Director Johnson said he wanted to increase his number of visits and to document subjective observations. He is taking valuable time away from the children and discriminating against Principal Raines based upon her age and gender.

98.     Surely the taxpayers would want to pay Principal Raines the salary she has earned because the citizens would much rather pay a few more dollars to Principal Raines than have more children of color in jail, prisons, and committing crimes.

99.     **Assistant Principal Ronald Howard:** Assistant Principal Ronald Howard incorporates Paragraph 69 by this reference. Defendant Seattle School District conspired and acted jointly and in concert with multiple upper level personnel and different departments, under color of state law or authority; with a discriminatory intent, and subjected Plaintiff Howard, a citizen, to a deprivation of his rights, privileges and  immunities, to wit, due process, equal protection of the law or equal privileges and immunities and that overt acts were done pursuant to the joint actions of  multiple departments and the upper level management team.

100.     Defendant Seattle School District's overt acts moved the conspiracy from the area of thought and conversations into action that caused the civil injury which resulted in damage to Plaintiff Howard.  The following are the overt actions of Defendant Seattle School District

101.     Assistant Principal Howard was approached by Director Ruth Medsker last school year and informed Assistant Principal Howard that he was not really an assistant principal and that his appointment was temporary and provisional. Director Medsker, a white female, told Assistant Principal Howard that if he

COMPLAINT FOR DAMAGES - 32

wanted to be an assistant principal, he would need to seek employment in another school district. Assistant Principal Howard retained legal counsel and kept his title and position. At that point, the defendant had thoughts and conversations about finding a way to retaliate against Assistant Principal Howard.

102.    In furtherance of the objective of their joint actions, Defendant Seattle School District, both acting under color and pretense of the statutes, ordinances, customs and laws of the State of Washington and in a willfully, malicious, intentional, and discriminatingly misused their authority and that of its subordinates and attempted to punish Assistant Principal Howard because two special education had sex in the bathroom.  The police declined to prosecute because it was not clear whether it was consensual.  Director Medsker sent Assistant Principal Howard a letter stating that she was recommending to Superintendent Goodloe-Johnson that for the first time an assistant would be suspended and docked 5 days pay.

103.    Seattle District willfully acting in concert with each other by themselves, its agents, servants and subordinates, each and all procuring, aiding and encouraging the other did purposely and systematically and intentionally discriminate against Plaintiff Howard because three white female teachers ignored for many years their concerns about a classroom teacher molesting female students.  These women did not get disciplined.  Plaintiff Howard was subjected to this disparate treatment because of his color and gender.

104.    Seattle School District maliciously and intentionally created a hostile working environment for two years for Assistant Howard based upon his race to get him to go to another district. Assistant Principal Howard is succumbing to the fear and intimidation of the hostile environment. Assistant Principal Howard is walking with his upper bent over more

COMPLAINT FOR DAMAGES - 33

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

and more as time goes on.   Assistant Principal Howard knows he cannot throw in the towel because everything he told his young charges would be a lie.

105.    Superintendent Goodloe-Johnson followed Director Medsker's directive. She attempted to suspend him for five days without pay.   Assistant Principal Howard retained legal counsel.

106.    Mr. Howard requested a hearing and contested the adverse action.  Assistant Principal Howard received a letter from Deputy General Counsel Faye Chess-Prentice.   Deputy Counsel Chess-Prentice told him that he had violated the statute of limitations therefore the Superintendent would not be scheduling a hearing for him and he was support of a subordinate mid-level manager to work out the details of his punishment.

107.    Deputy Chess-Prentice was advised in a letter that she could not decide herself whether an appeal was timely filed and both federal and state rules of civil procedure clearly provide that any statute of limitations argument was a defense but that the Superintendent was statutorily directed to retain a hearing officer.   The letter further explained to Deputy Chess-Prentice that this was a non-delegable duty state.   Translated it means that a specific governmental duty or responsible cannot be delegated unless the statute clearly and specifically advises the governmental official that this is a duty they can delegate.

108.    Moreover, under 28A.400.100 the language is so clear it does not leave room for any interpretation; only principals can "Submit recommendations to the school district superintendent regarding the appointment, assignment, promotion, transfer, and dismissal of all personnel assigned to the attendance area for which he or she is

COMPLAINT FOR DAMAGES - 34

responsible.    This duty and responsibility is non-delegable as well it should be. There was no recommendation from Assistant Principal Howard's principal.

109.    In furtherance of the conspiracy, after this December 26, 2008 letter, Deputy Chess-Prentice replied and essentially wrote she did not care what the law said.    The letter also advised Superintendent Goodloe-Johnson that she did not have the statutory clearance to modify Assistant Principal Howard's contract.    Assistant Principal Howard copied the Superintendent and Board President Cheryl Chow.    Other attorneys in town are frustrated with Deputy Chess-Prentice's legal acumen on the simplest of legal concepts.    To wit, a local attorney wrote to the Superintendent, "…Ms. Chess-Prentice responded for the district …both responses were legally and factually wrong on a number of significant issues.    She was blatantly wrong about the law…she obviously did not read the law I sent to her twice".

110.    In furtherance of the conspiracy, the conspirators were acting jointly to harass, intimidate, and create a hostile working environment for Assistant Principal Howard, deny him substantive and procedural due process and equal protection under the law.    To wit, Seattle School District had the low level employee telephone him to ask him when he was going to start serving time for his punishment. This subordinate did not have the respect to go through the Principal, his direct supervisor.

111.    **Sandra Bosley**:  Ms. Bosley incorporates Paragraph 69 by this reference.    Defendant Seattle School District conspired and acted jointly and in concert with multiple upper level personnel and different departments,    under color of state law or authority; with a discriminatory intent, and subjected Plaintiff Bosley,  a citizen, to a deprivation of her rights, privileges and  immunities, to wit, due process, equal protection of the law or equal privileges

COMPLAINT FOR DAMAGES - 35

and immunities and that overt acts were done pursuant to the joint actions of multiple departments and the upper level management team.

112.    Defendant Seattle School District's overt acts moved the conspiracy from the area of thought and conversations into action that caused the civil injury which resulted in damage to Plaintiff Bosley.  The following are the overt actions of Defendant Seattle School District.

113.    Ms Bosley was on the right path to fulfill her passion and life's dream of actually leading a school by motivating them to become high achievers until Seattle School District started to not interview or place Ms. Bosley into the pool of candidates because of her age.

114.    Reviewing data from the Danforth Program, every year since 1999, the Danforth Program graduated one American Black person except for the year Ms. Bosley has graduated. Ms. Bosley was over forty.  Seattle School District had a practice or pattern of not promoting and approving the Danforth Program for candidates over forty.

115.    Ms. Bosley is on medical leave because the hostility she feels constantly from upper management has caused severe depression.

116.    **Mark Della:**  Mr. Della incorporates Paragraph 69 by this reference. Defendant Seattle School District conspired and acted jointly and in concert with multiple upper level personnel and different departments, and the Local 609, under color of state law or authority; with a discriminatory intent, and subjected Mr. Della, to a deprivation of his rights, privileges and immunities, to wit, due process, equal protection of the law or equal privileges and immunities and that overt acts were done pursuant to the joint actions of multiple departments and the upper level manage team.

COMPLAINT FOR DAMAGES - 36

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

117.    Mr. Della applied for the Manger of School Security position and the director of facilities came to him with his application in hand and said he was not going to accept any application front Mr. Della.  From that point, Mr. Della started to feel the hostile environment largely created by Local 609 and the Seattle School District did nothing to stop the harassment.  To wit, the union leader at Local 609 routinely sent out emails to all the members referring to Mr. Della as the "brown one" or other derogatory language. Mr. Della carries the pain of his harassment in his heart and his eyes show deep sorrow.

118.    Events took an unexpected turn in June 2008, for years Mr. Della functioned as the assistant manager handling all of the details delineated above.  In his position, he expected to be apprised of policy changes since he was second in command but he was totally excluded and marginalized by the new manager and a nurse who appended herself to the department.

119.    The Local 609 Union Leader sent this email to the entire Local 609 membership. "Last week we were notified that the powers that be in the District had changed course on us and decided that one of the new "supervisor" positions under the reorg would be given to a current employee "M*** D****" who has important connections in upper administration, rather than, through "competency" and qualifications".  In that this changes a lot of what we have been discussing over the last 7 months, on Saturday, our union".  General Membership meeting voted to go on record as "making no recommendation" to you as to the changes (to our contract)' necessary to implement the new structure. June 16, 2008.

120.    As you know, we have been meeting and negotiating changes in the organizational structure (job descriptions, promotional processes, etc. of the Safety and Security Dept. for over 6 months now.

COMPLAINT FOR DAMAGES - 37

**LAW OFFICE OF BRENDA J. LITTLE, LLC**
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

121.    We have had several "non-negotiables" including that all of our members would have an equal chance (along with other department employees) to compete for the newly created positions ("At Risk, Tactical, Supervisory", etc.).  I don't mind telling you that it has been a challenge to persuade our members of the necessity of vacating current positions and replacing them with different jobs calling for higher skills, pay and responsibilities. One way we did this (and by listening to the Superintendents goals, strategic plan, realignment directions, etc.) was to assure members that "All positions would be vacated and every employee has an equal shot at demonstrating the skills and capabilities to obtain a new position with more responsibilities, pay, etc. '" have done that repeatedly.

122.    Change can be hard and representing the individual wills of a diverse group of long term (and extremely skeptical) employees can be a real challenge. We have endeavored to do that often over the last 6 months in settings too numerous to list here. Suffice it to say our members have urged great caution to us to avoid the pitfalls which have plagued the District so often in the past.

123.    I don't mind telling you that having lobbied the Legislature for over 20 years specifically on Safety and security issues, (for our Local as well as the one which represents Tacoma 3D security) as well as representing the employees of the department here, I have grown to be an enthusiastic supporter of a number of the changes involved in this re-org over recent months as reflecting new and different directions the Department needs to adopt in order to deal with an ever changing society in education.  However, all of that changed this week.

COMPLAINT FOR DAMAGES - 38

124.    Another of the "non-negotiables" which we have stressed from day 1 has been that "Mr. M*** D**** has no responsibilities and/or authority over any member of Local 609 at any time, shape or form". We have been clear and unequivocal about this underpinning.

It has been thus for many years (over 12)1 at least. In the 1990's" Mr. D**** was briefly "interim" Manager of the department and for a variety of reasons, our members came to have absolutely no respect or confidence in him since that time. Let me add that "contempt" would not even begin to describe our members' feelings for him.

125.    I can tell you how laughable his efforts have been during the ensuing years. Virtually everything he has touched has been messed up. Once an experienced Manager was hired, he asked me to "leave D**** alone" and I have done that, not speaking more than a handful of words to him since 1998. However, frequently when I have been exposed to screwball stuff from the department I have attributed the source of the problem to Mr. Della and I have seldom been wrong.

126.    A common joke has been that no one knows what Mr. D**** does for a living but (with d deep eye-roll) he has been protected and employed by the District long after anyone else with his lack of knowledge or demonstrable skills should have been gone. Our members know this.  For these reasons, we were shocked and bitterly disappointed to hear that Mr. D**** will be "given" a new position in the newly reorganized department without having to compete and or demonstrate any competencies whatsoever simply because he has "friends in high places".

127.    This demonstrates that nothing has changed at the District and all the platitudes about hiring the best individuals for jobs is just lip service. Our steward that has been a part of our

COMPLAINT FOR DAMAGES - 39

discussions all year said to me in response this week: "Now that the District has shown its hand this way, not only won't I recommend (the implementing changes to our Agreement) but I won't even vote for them! "

128.    Don, I can't allow these typical District shenanigans to put me at odds with the collective (and unanimous) will of our membership. For these reasons, we will almost certainly NOT be recommending an affirmative action on the part of our union Local on the re-org.    Let me know if you'd like to discuss this further".

129.    There are other publications where the union leader repeatedly says slanderous and defamatory statements about Mr. Della in the name of solidarity for a number of years.

130.    When Mr. Della read this email given to him by one of Local 609 members, he called Ammon McWashington and left him a message about the union leaders email.    Mr. McWashington tracked down Mr. Della to Roosevelt High School.    Mr. McWashington assured Mr. Della that he was the supervisor over Pegi McEvoy and that had relayed to Ms. McEvoy that Mr. Della based upon his experience, strengths, work ethic Mr. McWashington was going to grandfather Mr. Della into one of the supervisory positions.    This has been a longstanding practice and unwritten policy of the district, it worked well.

131.    Seattle District with Local 609 willfully acting in concert with each other by themselves, its agents, servants and subordinates, each and all procuring, aiding and encouraging the other did purposely and systematically and intentionally discriminate against Plaintiff Della because it allowed the Union to create a hostile working environment for years and then entered into a 7 month joint action to remove Mr. Della from his position

COMPLAINT FOR DAMAGES - 40

132.    In furtherance of the joint action, the Union leader wrote in the above passage that the members did not want the current staff members replaced and that included Mr. Della because he has earned their respect.    To wit, "I don't mind telling you that it has been a challenge to persuade our members of the necessity of vacating current positions and replacing them with different jobs calling for higher skills, pay and responsibilities".

133.    Seattle School District maliciously and intentionally allowed the union leader to create a hostile working environment for 12 years Mr. Della based upon his race to remove him from the position that added to the safety of the district.

134.    Mr. Della applied for one of the three positions, he was number three on the candidate list but when the district went to hire they skipped him at No. 3 and made an offer to No. 4. The position is still not filled today.

135.    Mr. Don Kennedy conspired with the Union, went outside the chain of command and exercised power and authority that had not been given to him.    Ten days later, Mr. Kennedy had a letter hand delivered to Mr. Della undercutting Mr. McWashington's decision to grandfather Mr. Della into one of the new positions for the kids' sake.

136.    Mr. Della lost everything with no warning, his evaluations were always good, his supervisor's supervisor the man ultimately responsible for Safety and Security had made a verbal commitment to Mr. Della.

137.    **Demetrice Thomas-Danzy**:  Ms. Thomas-Danzy incorporates Paragraph 69 by this reference. Defendant Seattle School District conspired and acted jointly and in concert with multiple upper level personnel, the Seattle Educational Association and different departments, under color of state law or authority; with a discriminatory intent, and subjected Plaintiff

COMPLAINT FOR DAMAGES - 41

Thomas-Danzy, a citizen, to a deprivation of her rights, privileges and immunities, to wit, due process, equal protection of the law or equal privileges and immunities. Defendant Seattle School District's overt acts moved the conspiracy from the area of thought and conversation into action that caused the civil injury which resulted in damage to Plaintiff Thomas-Danzy. The following are overt acts of the Defendant Seattle School District. In furtherance of the objective of their joint actions, Defendant Seattle School District, both acting under color and pretense of the statutes, ordinances, customs and laws of the State of Washington and in a willfully, malicious, intentional, and discriminatingly misused their authority and that of its subordinates and the power of her union in its attempt drive Ms. Thomas-Danzy out of the school district. To wit, Ms. Thomas-Danzy's union representative wrote Ms. Danzy an email that if she dropped her EEOC Complaint the school district would return her to her former position, work site and remove any negative letters of reprimands from her personnel file.

138.    In a threatening and intimidating way, when Ms. Thomas-Danzy told this current management team, that she was being directed to teach special education students without a teaching certificate or a special education endorsement, the upper management became increasingly hostile in spite of her excellent work history. To wit, Dr. Donald Felder wrote on an evaluation that "Ms Demitrus (sp) Danzy-Thomas was the real source of stability at Southwest Youth Service Bureau. With a new teacher assigned to this site again, it was really important for Ms. Danzy to function outside her role. She was available to give guidance. Ms. Danzy provided the counsel when the program ventured into the chaotic stage. She did what was required to keep the program on track to exceed its yearly goals. Ms. Danzy is one

COMPLAINT FOR DAMAGES - 42

[of] our best employees and this year she proved that her performance could remain at an outstanding level even in the face of diversity.  Without her social skills classes, the frequency of student disruption would have been abnormal.  Consequently, it is a real credit to her that she stood tall in the face of adversity to maintain the foundation of successes that are traditional in this educational unit.

139.    It intentionally suppressed the provisions in the whistle blower statute especially the provisions regarding retaliation under R.C.W. 42.41 et. seq. The statute requires local /state employees, to submit a written report to the supervisor or designee, stating in detail the basis' for the employee's belief that an improper governmental action has occurred.

140.    Seattle District willfully acting in concert with each other by themselves, its agents, servants and subordinates, each and all procuring, aiding and encouraging the other did purposely and systematically and intentionally retaliated by creating a hostile environment where Ms. Thomas-Danzy would be sent home without paperwork for long periods of time. On one occasion the district did not pay Ms. Thomas-Danzy for 257 hours.  Misa Garmoe a human resources manager said in an email I don't  believe we ever formally put her out on unpaid leave we just charged her leave without pay.

141.    In furtherance of the joint action and common motives to break the will of Ms. Thomas-Danzy, like they did with Audrey Weaver, Faye Chess-Prentice and Sue Means overruled Ms. Garmoe in not given Ms. Thomas-Danzy her 257 hours of pay.  This is beyond hostile working environment and more in line with an organized conspiracy to do more wrongdoings.

COMPLAINT FOR DAMAGES - 43

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

142. Because of the escalating severity at the type situations the district threw at Ms. Thomas-Danzy, she systematically and with great courage wrote emails to every and anyone and asked them to stop the harassment. No one single upper or lower level employees responded to her cries for help. The emails went to her Union officials, her supervision, and human resources and the race and equity department, no one said they would help her.

143. In fact they took money from governmental agencies for services they were not delivering for special education students of color. It forced educators with two year degrees and no teaching certificate to teach specialized instruction. These maladjusted students are multiplying exponentially and some of it could be for the lack of any meaning educational services, assistive technology, and all the other add-ons that promote growth are allocated unfairly to the North end students.

144. The district failed to acknowledge Ms. Thomas-Danzy was a whistleblower. Ms. Thomas-Danzy even sent Superintendant Goodloe-Johnson, PhD, a certified letter outlining the violations and the ensuing retaliation and harassment by others.

145. The district's common purpose and scheme worked to the detriment of special education students and it saved, in the short run, the district from hiring a certificated teacher.

146. Defendant Seattle School District willfully, intentionally, and without regard to appropriate services for special education students in Public Schools., it violated the Individuals With Disabilities Education Act (IDEA) and the No Child Left Behind Act. These Acts are similar in they provide greater protections for the disabled and chronic underachievers. To wit, one statue that clearly dedicates, requires that in order for the District to receive federal funds, all teachers, teaching core subjects, must have a college degree and

COMPLAINT FOR DAMAGES - 44

must be certified. Under IDEA, monies received are only supposed to be used to pay the excess costs of providing special education and related services to children with disabilities.

147.    It willfully violated public policy. Seattle School District retaliated against Ms. Thomas-Danzy and it has been ongoing.   On March 15, 2007, Ms. Danzy filed her complaint that special education students were receiving the services of a non-certificated teacher.  On April 17, 2007, Ms. Thomas-Danzy was given a letter of reprimand and disciplinary action was taken against her.

148.    In furtherance of the common scheme to force Ms. Danzy out of the District, multiple upper level HR personnel and different Departments M  anagers Sue Means, Misa Garmoe, Cindy Ortega, and Faye Chess-Prentice demoted her  a step down without just cause and had her working out of her classification again.  Ms. Danzy suffered acts such as being sent home without pay, harassment, being transferred from site to site, job responsibilities taken away,, blackballed, deformation of character, transferring her half day between two different sites caused her to walk 14 blocks or pay $16 per day for parking without receiving any reimbursement, refused to provide her a restroom key at Fairview, which prevented her from using the facilities if no one was there with a key.

149.    Ms. Thomas-Danzy was transferred to Ballard per formal HR Manager Laurie Taylor, against her wishes and put in a EBD classroom  to be used as a Special Education 1 on 1 Assistant.   While at Ballard she encountered an American Black male, special education student who had not been evaluated for six years so the teacher dummied up some documents. Student had nontraditional behaviors for a school setting.  Ms. Thomas-Danzy believes that if she informed the Principal, Phil Brockman, he would have done something about it but based

COMPLAINT FOR DAMAGES - 45

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

on Ms. Thomas-Danzy past experience with the district she was very reluctant and feared more retaliation, so she stayed silent until now.

150.    Ms. Thomas-Danzy has a four inch three ring binder of harassing letters, letters with obvious misstatements, emails that stated she should not have had the 257 hours taken away from her, and other documents that give a real clear of her troubles.   Included in the notebook is a letter from her physician which provides in part, "I believe the district is treating her unfairly and to the detriment of her physical and mental health".

151.    **Audrey Weaver:**  Ms. Weaver incorporates Paragraph 69 by this reference**.**  Seattle District willfully acting in concert with each other by themselves, its agents, servants and subordinates, each and all procuring, aiding and encouraging the other did purposely and systematically and intentionally discriminate against Plaintiff Weaver based upon color, and gender.

152.    Seattle School District maliciously and intentionally created a hostile working environment for Ms. Weaver.  Ms. Weaver finally succumbed to the fear and intimidation of the hostile environment and left her position informing the district she had been constructively terminated.  Ms. Weaver is not the same person.

## B.  THIRD CAUSE OF ACTION
### DEFENDANT SEATTLE SCHOOL DISTRICT
### ADEA VIOLATIONS 29 U.S.C. § 623(a)(1);   RCW 49.60

153.    Plaintiff Raines, Plaintiff Bosley, Plaintiff Della alleges that Seattle School District has discriminated against based upon age.  Under the ADEA, employers may not "fail or refuse to hire or ... discharge any individual [who is at least forty years old] or otherwise

COMPLAINT FOR DAMAGES - 46

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).    Disparate treatment is demonstrated when "`[t]he employer simply treats some people less favorably than others because of other protected characteristics.

154.    **Beverly Raines:**  Plaintiff Raines has direct evidence namely the statements that Director Johnson made to her about retiring and Director Johnson placing her on a performance plan when she and her staff made Annual Yearly Progress, not an easy accomplishment at Brighton.

155.    **Sandra Bosley**:    Ms. Bosley can provide direct evidence in the hiring and promotion pattern of Seattle School District until she graduated for the program. Each cohort had at least one American Black person whom the district promoted to be an administrator until their choice was Ms. Bosley.

156.    Ms. Bosley's evaluator at McClure argued that Ms. Bosley was capable of filling the assistant principal position but instead they promoted another Danforth graduate who is significantly under 30.

157.    **Mark Della:**  Mr. Della was not grandfathered into one of the new restructured positions even though he interviewed for one of the positions.  He was the third candidate but the district overlooked him and offered it to the fourth candidate but he refused.  So far, no one has stepped forward to take on that daunting position.

COMPLAINT FOR DAMAGES - 47

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

### D.  FOURTH CAUSE OF ACTION
### DEFENDANT SEATTLE SCHOOL DISTRICT
### FAILURE TO ENGAGE THE INTERACTIVE PROCESS
### EEOC REGULATIONS 42 U.S.C. S 12116; RCW 49.60

159.    Plaintiff Stallworth, Plaintiff Thomas-Danzy; and Plaintiff Johnson,  Plaintiff Weaver, Plaintiff Perkins separately and  collectively, the Defendant Seattle School District failed to engage in the interactive process in good faith.  Instead it took a dictatorial, top down, do not mess with us attitude.  The American Disabilities Act authorized the EEOC to issue regulations implementing the ADA. The interactive process is at the heart of the ADA's process and essential to accomplishing its goals.

160.    The Ninth Circuit explicitly ruled that the interactive process is a mandatory rather than a permissive obligation on the part of employers under the ADA and that this obligation is triggered by an employee or an employee's representative giving notice of the employee's disability and the desire for accommodation.

161.    The above-mentioned will provide direct evidence that Seattle School District failed to engage in the interactive process, sent them home without explanation.

### E.  FIFTH CAUSE OF ACTION
### DEFENDANT SEATTLE SCHOOL DISTRICT
### U.S.C. SECTION 1981

162.    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

COMPLAINT FOR DAMAGES - 48

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

163.   For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.   Defendant Seattle School District did the following discriminatory overt acts based upon race as following:

165:   Never had Seattle School District failed to honored a tenured teacher's contract signed by the Superintendent like it did with Plaintiff Chalice Stallworth, an American Black female.

166.   Never has Seattle School District failed to schedule during process hearing for certificated staff members when asked, like it did with Assistant Principal Ronald Howard and Chalice Stallworth, an American Black male and female.

167.   Never has the General Counsel Office ignored completely a civil procedure that requires only judges to determine whether the statute of limitations defense is valid, like it did with Assistant Principal Ronald Howard and Chalice Stallworth, a American Black male and an American Black female.

168.   Never in its recent history has it denied American Blacks and Filipinos basic due process protections and equal protection under the law.


## F. SIXTH CAUSE OF ACTION
## DEFENDANT SEATTLE SCHOOL DISTRICT
## FIRST AMENDMENT VIOLATIONS, SECTION 1983

160.                         Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

COMPLAINT FOR DAMAGES - 49

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

161.    In furtherance of its common scheme and common purpose, it violated the First Amendments Rights Plaintiff Pleasant when he asked the Superintendent where was all the money going and with Demetrice Thomas-Danzy when she attempted to report a serious violation of law and best practices.

### G.  SEVENTH CAUSE OF ACTION
### DEFENDANT SEATTLE SCHOOL DISTRICT
### STIGMA PLUS FOURTEENTH AMENDMENT VIOLATION

91.    In furtherance of the objective of the aforesaid conspiracy, Defendant Seattle School District, acting under color, customs and laws of the State of Washington, willfully, maliciously, intentionally discriminated by allowing with any action the union representative to defame Plaintiff with untruths that he was incompetent and basically stupid.  Seattle School District made a deal with the union to publicly to fire Plaintiff as a "non-negotiable" item to passing their contract probably created in smoke filled back room.  Defendant Seattle District (1) placed a stigma on Mr. Della and his reputations; (2) Defendant Seattle School District made those statements public by and through Local 609 the  very public action of firing him

COMPLAINT FOR DAMAGES - 50

LAW OFFICE OF BRENDA J. LITTLE, LLC
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

after the inflammatory email, acting under color of state law; (3) Defendant Seattle School District allowed public statement in conjunction with Mr. Della's termination from his position, and (4) Defendant Seattle School District knew or should have known that the statements were false.

92.    Mr. Della had a direct injury to his their reputations plus some other significant negative consequence is a loss of liberty that triggers due process. Mr. Della has suffered a deprivation of liberty by firing and artificial manipulating the hiring system.

93.    In intentionally and willfully, and maliciously stigmatizing Mr. Della when it intentionally placed him in a false light so he would not be a competitor against the private and east side schools as a coach.

94.    In intentionally and willfully maliciously disregarding Mr. Della vulnerability as a human being.  Mr. Della is emotionally fragile and filled with anger.

95.     Mr. Della has been unable to find community related position which he is accustomed to.   He is working at a casino for minimal wages in an environment he does not like and is detrimental to his health.


WHEREFORE, Plaintiffs request that the judgment of this Court be entered against the Defendants for the following:

a.    Plaintiffs suffered from the Defendants' overt acts which caused severe emotional distress.

b.    That the Defendants could have reasonably avoided injuring the Plaintiffs had it believed that all people are equal under the law. .

COMPLAINT FOR DAMAGES - 51

**LAW OFFICE OF BRENDA J. LITTLE, LLC**
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)

c.       Award Plaintiffs compensatory damages and punitive damages, if allowed, in the amount to be determined at trial on this matter;

d.       Award Plaintiff her attorneys' fees, including litigation expenses and the cost of this action including the investigation;

Grant such other and further relief as may be just and proper.


## XIV.   DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated this day of 20th,  February, 2009.


/s/ Brenda J. Little_____
Brenda Joyce. Little, WSBA No. 17688

**LAW OFFICE OF BRENDA J. LITTLE, LLC**
524 First Avenue South
Seattle, WA  98104
(206) 622-2458
(206) 624-5381(Fax)