UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BEVERLY ANETTE RAINES, Principal, Brighton School, SANDRA BOSLEY, Former Interim Principal at Dunlap, CHALICE STALLWORTH, Elementary School Teacher, RONALD PLEASANT, Teacher at Cleveland, MARK DELLA, Former Deputy Security Manager, DEMETRICE THOMAS-DANZY, Correctional Education Associate at Interagency Academy, AUDREY WEAVER, Security Specialist, Chief Sealth, JACQUE JOHNSON, Security Specialist, Ballard, and MARCUS PERKINS, Recently Fired Custodian,<br><br>      Plaintiffs,<br><br>  v.<br><br>SEATTLE SCHOOL DISTRICT NO. 1, a municipal corporation,<br><br>      Defendant. | CASE NO. C09-203Z<br><br>ORDER |

THIS MATTER comes before the Court on the defendant Seattle School District No. 1's (the District) motion for partial summary judgment, docket no. 193; the District's motion to strike the plaintiff Demetrice Thomas-Danzy's response as untimely, docket no. 202; and the District's

ORDER -1

motion to strike portions of Thomas-Danzy's response, docket no. 202.   Having reviewed all papers filed in support of, and in opposition to, each motion, the Court enters the following Order.

**Background**

This case arises from multiple plaintiffs' employment with the District.   One plaintiff, Demetrice Thomas-Danzy, alleges that the District violated the Equal Pay Act (EPA) and breached its implied-in-fact contract with her.   She also asserts a promissory estoppel claim.

A.   **Relevant Factual Background**

1.   **Chronology of Events**

Demetrice Thomas-Danzy is a Corrections Education Associate (CEA) for the District.   Declaration of Demetrice Thomas-Danzy ¶ 2, docket no. 199.   She has a business administration certificate from Griffen Business College in Seattle, WA, but does not have a bachelor's degree or teaching certificate.   Declaration of Gregory Jackson Ex. 1 (Thomas-Danzy Dep. Vol. 2, p. 109-10), docket no. 194.   As a CEA, the District considers her classified paraprofessional staff, where she assists certificated teaching staff inside or outside the classroom.   Declaration of Elaine Williams Ex. 1, docket no. 198.

Between 2004 and November 2006, Thomas-Danzy taught Reading.   *See* Thomas-Danzy Decl. Ex. 2; Jackson Decl. Exs. 5, 6.   In November 2006, Principal Cindy Ortega told Thomas-Danzy that she could not teach Reading or any other academic subject.   Jackson Decl. Ex. 6.   Subsequently, on November 9, 2006, Thomas-Danzy stopped teaching Reading.   *Id.* at Ex. 5.   Between 2004 and the spring of 2010, Plaintiff also taught Behavior Modification.

ORDER -2

Thomas-Danzy Decl. ¶ 11 & Exs. 1, 3, 6. In these classes, Thomas-Danzy tracked her students' assignments and gave grades for those assignments. Id. at ¶ 6 & Ex. 3. The District also gave her scheduled "prep" time to prepare for her classes, which the District also provided to classroom teachers. Id. at ¶ 3.

The District did not consider Behavior Modification a core academic subject.[1] Declaration of Cynthia Nash ¶ 4, docket no. 204. Because it was not a core academic class, the District allowed the class to be taught by suitably trained individuals who did not have a state teaching certificate. Id. The school's principal and certified teaching staff, not CEAs, developed the curriculum or assignments for these classes. Id.

In March 2007, Thomas-Danzy filed a grievance with her union to complain that, by assigning her to teach classes, the District assigned her to work outside of her job description without appropriate pay. Thomas-Danzy Decl. Ex. 4. She believed that the District did this because she was female. Id. at ¶ 10. She also thought that the District treated male CEAs differently because male CEAs did not appear to work as classroom teachers. Id. In October 2007, Thomas-Danzy filed a Charge of Discrimination with the Equal Employment Opportunity

---

[1] The District provides this, and other evidence, with its Reply brief. The general rule is that "where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (internal quotations omitted). A court may, however, consider new evidence that rebuts arguments made in opposition to the motion. *See Equal Emp't Opportunity Comm'n v. Creative Networks, LLC*, No. 05-3032, 2008 WL 5272780, at *2 (D. Ariz. Dec. 15, 2008) (holding that defendants' submission of evidence presented in reply was proper because the evidence rebutted arguments plaintiffs made in their opposition to defendants' motion). Accordingly, because the District presents evidence against Thomas-Danzy in its Reply to rebut Thomas-Danzy's claims that she performed work "substantially equal" to a Classroom Teacher's work, the Court considered the District's evidence.

Commission (EEOC), accusing the District of sex discrimination.  Jackson Decl. Ex. 3.  In February 2008, the EEOC dismissed this charge.  *Id.* at Ex. 4.

Before the 2008-2009 school year, the District assigned Thomas-Danzy to work at another school.  Thomas-Danzy Decl. ¶¶ 15-16, Ex. 7.  On October 5, 2008, the District transferred Thomas-Danzy again.  *Id.* at ¶¶ 15-16, Ex. 7-8.  Thomas-Danzy told a representative of the District, Laurie Taylor, that the transfer would negatively impact Thomas-Danzy's employment with the District, and stated that Ms. Taylor previously made a "verbal promise" to "protect [her] future position along with [her] seniority as a CEA."  *Id.* at Ex. 8.  Between October 20, 2008 and December 5, 2008, the District "sent [Thomas-Danzy] home" and stopped paying her.  *Id.* at ¶¶ 17, 19.  The District did not place her on unpaid leave, and she never requested a leave of absence.  *Id.* at ¶ 17.  Furthermore, the District did not allege misconduct against, discipline, or terminate Thomas-Danzy.  *Id.*  Between October 20, 2008 and December 5, 2008, Thomas-Danzy lost at least 256 hours of compensation.  *Id.* at ¶ 19.

Throughout the fall of 2008, the District employed and compensated male CEAs.  *Id.* at ¶ 18.  In October 2008, the District hired Daniel Gotkin.  *Id.*  Gotkin was a male CEA who had less seniority than Thomas-Danzy.  *Id.*  Thomas-Danzy returned to work in March 2008.  *Id.* at ¶ 20-21.  The District continues to employ Thomas-Danzy to this day.  *Id.*

### 2. CEA and Classroom Teacher Job Descriptions and Pay

The CEA job description stated that a CEA was "[u]nder supervision of the school principal and/or designated certificated staff, [and] perform[ed] varied behavior management and

ORDER -4

skills-training services" for delinquent youth. Williams Decl. Ex. 1, at 2. CEAs were allowed to "lead students in educational activities but [were] not permitted to relieve certificated teachers or administrators of their responsibility for designing and modifying instructional programs, making instructional strategy decisions, and overseeing and formally evaluating student progress." Id. CEAs in "teaching-related positions" were "required to . . . perform under the guidance and supervision of certificated teachers or administrators." Id.

A CEA's job exposed CEAs to "distraught, difficult, violent, abusive and/or dangerous adults and students." Id. CEAs needed to be flexible and able to deal with students with a wide range of academic and behavior skills. Id. The District required CEAs to have certain skills and abilities, including dealing effectively with teenage behavior, working effectively with disadvantaged students and families, facilitating support services, and supporting learning and behavior shaping activities. Id. at 5. The District also required that CEAs have 90 quarter hours of college credits and two years of experience working with teenage youth. Id. at 4.

Classroom Teachers, on the other hand, fostered and enhanced an effective learning environment; facilitated the development or revision of curriculum and instructional materials; established learning objectives and standards; provided instruction; and counseled, disciplined, and supervised students. Id. at Ex. 2. Classroom Teachers also evaluated student performance and progress. Id. The District required Classroom Teachers to have knowledge of their assigned subject area, effective behavior management techniques, and rules and procedure for student safety. Id. Classroom Teachers also needed the following skills: proficiency in reading, writing, and oral

ORDER -5

communications; communicating with parents or guardians; and designing and implementing lesson plans for students with a wide range of academic achievement. <u>Id.</u>

Classroom Teachers also needed to be able to deal positively and confidently with students, be fair and consistent, adapt to change, remain flexible, manage student behavior, maintain a safe learning environment, provide instruction, demonstrate techniques, direct assistants, and establish and maintain positive working relationships. <u>Id.</u> Classroom Teachers needed at least a bachelor's degree that prepared the teacher to teach in a diverse urban school system. <u>Id.</u> Some positions also required additional education or professional experience. <u>Id.</u>

The salary scale of a CEA was fixed by a Collective Bargaining Agreement (CBA). <u>Id.</u> at Ex. 3. Sex was not a factor in calculating salaries under this CBA. <u>See id.</u> A Classroom Teacher's salary scale was also fixed by a CBA. <u>Id.</u> at Ex. 4. Sex was not a factor in calculating salaries under this CBA. <u>See id.</u> The Classroom Teacher's salary scale is higher than the CEA's because of the Classroom Teacher's increased teaching, educational, and professional certification requirements. <u>See id.</u> at ¶ 12, Exs. 1-4.[2] No evidence in the record provides the actual pay for Thomas-Danzy or any other CEA or Classroom Teacher.

**B.  Relevant Procedural History**

On February 17, 2009, Thomas-Danzy filed a Complaint (docket no. 1) against the District. This Complaint did not contain an EPA claim, but described (1) the events leading up to Thomas-Danzy filing a grievance with her union in March 2007, and (2) the period in 2008 when

---

[2] These facts are undisputed for the purposes of the District's motion because the Court finds no evidence in the record that contradicts them.

the District sent Thomas-Danzy home without pay.   Compl. ¶¶ 54-62, 137-38, 140-41, 147, docket no. 1.   On January 10, 2011, Thomas-Danzy filed a Third Amended Complaint (docket no. 133), which contained an EPA claim.

On October 27, 2011, the District filed this motion for partial summary judgment (docket no. 193), with a noting date of November 18, 2011.   On November 18, 2011, Thomas-Danzy filed her Response (docket no. 198).   On the same date, the Court issued a minute order (docket no. 201) renoting the District's motion (docket no. 193) to December 2, 2011.   On December 2, 2011, the District filed its Reply, which included a motion to strike Thomas-Danzy's response as untimely (docket no. 202), and a motion to strike certain exhibits from Thomas-Danzy's Response (docket no. 202).   Thomas-Danzy did not respond to either of these motions.

**Discussion**

**A.     The District's Motion to Strike Thomas-Danzy's Response as Untimely**

The District has moved to strike Thomas-Danzy's response as untimely.   Under Local Rule (7)(d)(3), "opposition papers shall be filed and served not later than the Monday before the noting date."   Although Thomas-Danzy filed her response on the noting date, the Court renoted the District's motion for partial summary judgment to December 2, 2011.   *See* Order, docket no. 201. By virtue of that order, Thomas-Danzy's Response is timely.

///

///

///

**B.    The District's Motion to Strike Exhibits Supporting Thomas-Danzy's Response**

The District has also moved, pursuant to Fed. R. Civ. P. 56, to strike exhibits 1-6 and 8-11 to Thomas-Danzy's response.[3]  Under Fed. R. Civ. P. 56(c)(2), a party can object to cited material if that material would be inadmissible.  Rule 56(c)(4) requires, in pertinent part, that an affidavit or declaration "set out facts that would be admissible in evidence."  The only exhibit the Court strikes is Exhibit 5.  Thomas-Danzy offers Exhibit 5, a proposed settlement agreement between the parties, to prove that the District is liable for her EPA claim.   Such settlement offers are inadmissible to prove liability.  <u>See</u> Fed. R. Evid. 408.

The Court declines to strike the remaining exhibits identified by the District.  Exhibits 1, 2, and 4, regardless of the time period they relate to, have some tendency to prove that Thomas-Danzy was teaching classes outside of her job description, which in turn goes to whether the District paid Thomas-Danzy less than male Classroom Teachers for substantially equal work.  Additionally, the District argues that Exhibit 3 does not provide evidence that Thomas-Danzy issued grades.  This argument, however, is one of the evidence's weight, not its admissibility.  Finally, the District argues that Exhibits 6 and 8-11 are inadmissible hearsay.  The Court admits the Exhibits for purposes of the motion for summary judgment.  <u>See</u> <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036

---

[3] Exhibit 1 is an October 12, 2004 letter from Principal Cindy Ortega stating that the District employs Thomas-Danzy as a CEA that teaches Behavior Modification class.  Exhibit 2 is a student letter stating that Thomas-Danzy taught Behavior Modification until the second semester of 2007.  Exhibit 3 is a Student Progress Report that Thomas-Danzy used to track assignments in her Behavior Modification class.  Exhibit 4 is a photocopy of the union grievance Thomas-Danzy filed to complain about teaching outside of her job description.  Exhibit 5 is a proposed settlement agreement between the parties, which the District offered Thomas-Danzy to settle her March 2007 union grievance.  Exhibit 6 is an April 28, 2009 recommendation letter from a math teacher that describes Thomas-Danzy's work as a CEA and behavioral modification teacher.  Exhibits 8-11 include email correspondence between Thomas-Danzy and District employees.

ORDER -8

(9th Cir. 2003) (at summary judgment, courts focus on the admissibility of contents, not form, of evidence).

### C.     The District's Motion for Summary Judgment

The District moves for summary dismissal of Thomas-Danzy's claims on four grounds: (1) Thomas-Danzy's EPA claim is barred by the EPA's statute of limitations; (2) Thomas-Danzy fails to establish a prima facie EPA claim; (3) Thomas-Danzy fails to provide evidence of a breach of contract; and (4) Thomas-Danzy's promissory estoppel claim is incongruent with her breach of contract claim and, even if she could bring her claim, she cannot establish the prerequisites of promissory estoppel.

#### 1.     Standard of Review

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In support of a motion for summary judgment, the moving party need not negate the opponent's claim, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006).

///

///

ORDER -9

### 2. EPA Statute of Limitations

The EPA limits recovery of wages to the two years preceding the plaintiff's complaint. 29 U.S.C. § 255(a). If the EPA claim arises out of a party's willful violation, recovery is limited to the three years preceding the plaintiff's complaint. *Id.* A later complaint "relates back" to the original if the claims in the later pleading "arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006).

Here, Thomas-Danzy's Third Amended Complaint relates back to her first complaint. Thomas-Danzy's Complaint, filed on February 19, 2009, described events leading up to and including her March 2007 union grievance filing, which included her teaching of reading and behavioral modification classes as a CEA. It also described the period in late 2008 when Plaintiff was sent home without pay. The EPA claim she asserted in her Third Amended Complaint was based on these same events. *See* Third Am. Compl. ¶¶ 9.1-9.8, docket no. 132. Thomas-Danzy's first complaint gave the District adequate notice of the substance of, and factual basis for, her claims. The District is not prejudiced from the addition of a claim arising out of the same facts from her first complaint. *See O'Donnell*, 466 F.3d at 1112.

Thus, under the EPA statute of limitations, Thomas-Danzy's claim is permissible to the extent that claim is based upon events from the two years preceding her first complaint (violations on or after February 19, 2007), or, if she can establish that the District willfully violated the EPA,

///

ORDER -10

the three years preceding her complaint (violations on or after February 19, 2006). Any claim relating to classes she taught before these dates are time-barred by the statute.

### 3. Failure to State a Prima Facie EPA Claim

To establish a prima facie EPA claim, Thomas-Danzy must show that the District paid different wages to employees of opposite sexes for equal work "on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."[4] Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974); see also 29 U.S.C. § 206(d)(1). The prima facie case is limited to a comparison of the jobs in question and "does not involve a comparison of the individuals who hold the jobs." Stanley v. Univ. of S. Cal., 178 F.3d 1069, 1074 (9th Cir. 1999). The jobs held by employees of opposite sexes need not be identical, but a plaintiff bears the burden of showing that the jobs being compared are "substantially equal." Stanley, 178 F.3d at 1074; Hein v. Or. Coll. of Educ., 718 F.2d 910, 913 (9th Cir. 1983).

Here, Thomas-Danzy tries to establish a prima facie EPA claim on the following two grounds: (1) as a CEA, although she performed "substantially equal" work as male Classroom Teachers between January 2008 and June 2010, the District did not pay her the same as those teachers; and (2) the District paid her less than Daniel Gotkin, a male CEA, when the District put her on unpaid leave between October 20, 2008 and December 5, 2008.[5]

---

[4] One circuit requires plaintiffs to also provide a specific male or female "comparator" to establish a prima facie EPA claim. See Strag v. Bd. of Trustees, 55 F.3d 943, 948 (4th Cir. 1995). The Ninth Circuit does not explicitly require a comparator, but does closely scrutinize "a comparison to a specifically chosen [comparator] . . . to determine its usefulness." Hein, 718 F.2d at 916.

[5] Thomas-Danzy also argues that the District did not treat male CEAs the same as her because the District did not assign male CEAs to work as teachers. She fails, however, to provide the Court with evidence that male CEAs were paid more than she was, evidence that is material to any EPA claim.

ORDER -11

### i. **Male Classroom Teachers**

Thomas-Danzy cannot establish that the District violated the EPA when it assigned her to teach Behavior Modification. The question of whether two jobs are substantially equal is one that must be decided on a case-by-case basis.[6] *Hein*, 718 F.2d at 913. Under the EPA, jobs requiring different skills are not substantially equal. *Id.* at 914. Significantly, a plaintiff does not make a prima facie case "by showing that the employees of opposite sex possess equivalent skills." *Id.* The statute "explicitly applies to *jobs* that require equal skills, and not to employees that possess equal skills." *Id.* (emphasis added). The only comparison of skills required is "a comparison of skills required by a job." *Id.*

Here, Thomas-Danzy cannot show that her work teaching Reading and Behavior Modification classes was "substantially equal" to a Classroom Teacher's work. Classroom Teacher and CEA jobs require different skills. Required CEA skills include dealing effectively with youth behavior, working effectively with disadvantaged students and families, facilitating support services, and supporting learning and behavior shaping activities. The Classroom Teacher job, however, requires a broader and deeper skill set. These skills primarily include lesson plan design, curriculum design, and the ability to differentiate curriculum and lesson plans to meet the diverse needs of students. Classroom Teachers must also evaluate student performance and assign final grades, manage student behavior, maintain a safe learning environment, provide instruction, and direct assistants in their classroom.

---

[6] Appellate courts review this finding under a "clearly erroneous" standard. *Hein*, 718 F.2d at 914.

Moreover, the Classroom Teacher job requires more education than the CEA job. The Classroom Teacher position requires, at a minimum, a bachelor's degree and state teaching certificate, while the CEA job does not. Classroom Teachers also have greater responsibility than CEAs. For example, Classroom Teachers developed and revised curriculum and instructional material; established learning objectives and standards; provided instruction; and counseled, disciplined, and supervised students. Nothing in the record shows that the District gave Thomas-Danzy similar responsibilities in her role teaching any of her classes.[7]

Even if Thomas-Danzy could establish that her work was "substantially equal" to a Classroom Teacher's, the District's wage differential is justified under the EPA. Once a plaintiff establishes a prima facie case of an EPA violation, the burden shifts to the employer to prove that the differential in wages is justified under one of the following four exceptions: the different wages are made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system that measures earnings by quantity or quality of production; or (iv) a differential based on any factor other than sex.[8] <u>Corning Glass Works</u>, 417 U.S. at 196; <u>Hein</u>, 718 F.2d at 913; <u>see also</u> 29 U.S.C. § 206(d)(1).

---

[7] Thomas-Danzy does provide evidence that she tracked and evaluated student assignments. <u>See</u> Thomas-Danzy Decl. ¶¶ 5, 6, Exs. 2-3. This evidence shows that Thomas-Danzy performed some functions of a Classroom Teacher while she taught Behavior Modification classes. This evidence does not, however, establish that Thomas-Danzy's CEA job required the same skill and knowledge, or was performed under the same working conditions, as a Classroom Teacher's. Thomas-Danzy also presented evidence that she received "prep" time, just like Classroom Teachers. <u>See id.</u> ¶ 3. Receiving "prep" time, however, does not show that Thomas-Danzy's <u>job</u> was "substantially equal" to that of a Classroom Teacher.

[8] An employee may rebut an employer's showing that differential pay is statutorily justified with evidence that the employer intended to discriminate and that the exception applied is merely pretext for discrimination. <u>Maxwell v. City of Tucson</u>, 803 F.2d 444, 446 (9th Cir. 1986). Here, however, the record conclusively reveals a non-discriminatory reason for the District's decision to pay Classroom Teachers more than CEAs. While Thomas-Danzy felt she was being discriminated against generally, and observed that other male CEAs were not asked to teach outside their job description, no evidence suggests that the District's <u>justifications</u> for the pay differentials were pretext for discrimination.

This inquiry is a question of fact.[9] <u>Hein</u>, 718 F.2d at 913.

Here, the District's wage differential is justified because the different wages are based on factors other than sex. The pay differential between CEA's and Classroom Teachers is due not to one's sex, but to the greater skill, knowledge, and education required to be a classroom teacher. <u>See</u> Williams Decl. ¶ 12 & Exs. 1-4. Classroom Teachers are also required to have a professional teaching certificate from the state. <u>See id.</u> Classroom Teachers also receive higher wages because of their greater job responsibilities and duties. <u>See id.</u> Moreover, sex is not a factor in determining the salary for either CEAs or Classroom Teachers. <u>See id.</u> ¶ 7, Ex. 3 (CEA) and ¶ 9, Ex. 4 (Classroom Teacher).[10]

### ii. **Male CEA Daniel Gotkin**

Additionally, Thomas-Danzy cannot establish that the District violated the EPA when it paid male CEA Daniel Gotkin to work while Thomas-Danzy was on unpaid leave. Thomas-Danzy cannot establish a prima facie EPA violation because she did not work and has no wages on which to base her EPA claim. Thomas-Danzy also fails to provide the Court with evidence that Mr. Gotkin received *more* pay than she would have received had she worked during this same time. Because she cannot establish the essential elements of her claim with respect to Mr. Gotkin, her claim fails as a matter of law.[11]

---

[9] Since this is a question of fact, it is reviewed under the "clearly erroneous" standard. <u>Hein</u>, 718 F.2d at 913.

[10] In its Reply, the District argues that Thomas-Danzy's Response contradicts her previous deposition testimony and should be considered a sham. The Court need not reach these issues because the Court's decision to grant the District's motion considered the alleged contradictions and therefore renders these issues moot.

[11] Thomas-Danzy argues that the District cannot demonstrate a gender-neutral reason for why it permitted Mr. Gotkin to return to work while sending Thomas-Danzy home. This argument is irrelevant to Thomas-Danzy's EPA claim. Under the EPA,

ORDER -14

### D.  Thomas-Danzy's Breach of Implied-in-Fact Contract Claim

In her complaint, Thomas-Danzy asserts that the District entered into an implied-in-fact employment contract.  <u>See</u> Third Am. Compl. ¶ 19.2.  The District argues that Thomas-Danzy fails to offer evidence that the District breached such a contract with Thomas-Danzy, while Thomas-Danzy argues that the District agreed to provide Thomas-Danzy employment as long as she performed her job in good faith.  Specifically, Thomas-Danzy claims that Laurie Taylor promised to "protect [Thomas-Danzy's] future position along with [her] seniority as a CEA." Thomas-Danzy Decl. Ex. 8.

In Washington, "the elements of a contract implied in fact are: (1) the defendant requests work, (2) the plaintiff expects payment for the work, and (3) the defendant knows or should know the plaintiff expects payment for the work."[12]  <u>Young v. Young</u>, 164 Wn.2d 477, 486 (2008). Here, Thomas-Danzy fails to establish two essential elements of an implied-in-fact contract. Nothing in the record shows (1) that the District requested Thomas-Danzy to work during the October 20, 2008 through December 5, 2008 period the District sent Thomas-Danzy home without pay; or (2) that Thomas-Danzy expected the District to pay her for such work.

---

Thomas-Danzy could rebut the District's provided justification for pay differentials with evidence that those <u>justifications</u> were pretext for discrimination.  Her argument does not relate to any pretext for the District's justifications for its pay differentials, but rather relates to the District's decision to put her on unpaid leave.

[12] The Washington Supreme Court synthesized these elements from the more traditional definition of a contract implied-in-fact, which

> is an agreement depending for its existence on some act or conduct of the party sought to be charged and arising by implication from circumstances which, according to common understanding, show a mutual intention on the part of the parties to contract with each other. The services must be rendered under such circumstances as to indicate that the person rendering them expected to be paid therefor, and that the recipient expected, or should have expected, to pay for them.

<u>Young v. Young</u>, 164 Wn.2d 477, 485-486 (2008) (quoting <u>Johnson v. Nasi</u>, 50 Wn.2d 87, 91 (1957)).

Thomas-Danzy also argues that the District is bound by its promises to her under an exception to the general rule that employees are terminable at will. In Washington, "if an employer . . . creates an atmosphere of job security and fair treatment with promises of *specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship." <u>Thompson v. St. Regis Paper Co.</u>, 102 Wn.2d 219, 230 (1984) (emphasis in original). Thomas-Danzy was an at-will employee.[13] The only promise Thomas-Danzy provides is the statement she claims Laurie Taylor made to her to protect her future position and seniority as a CEA. No reasonable trier of fact could find that this statement is a promise of *specific treatment in specific situations*. Even when viewed in the light most favorable to Thomas-Danzy, this statement, if true, is ambiguous and contains no specific terms suggesting when and under what circumstances the District, or Ms. Taylor, would protect Thomas-Danzy's position and seniority. Therefore, this exception does not apply.

### E. **Thomas-Danzy's Promissory Estoppel Claim**

The District first argues that Thomas-Danzy's promissory estoppel claim should be dismissed because the claim is incongruent with her contract claim. A promisee may, however, bring a claim for breach of contract and, in addition or in the alternative, a claim for promissory estoppel. <u>See</u> <u>Flower v. T.R.A. Indus., Inc.</u>, 127 Wn. App. 13, 30-32 (2005); <u>see also</u> Wash. Pattern Jury Instr. Civ. 301A.01 (comment: additional or alternative claims).

---

[13] CEAs have a CBA with the District. <u>See</u> Williams Decl. Ex. 4. Thomas-Danzy also refers to an employment contract with the District in her deposition. <u>See</u> Jackson Decl. Ex. 1, at 12.

The District next argues that Thomas-Danzy cannot establish the elements of a promissory estoppel claim. In Washington, a party seeking recovery under promissory estoppel must prove the following: (1) a promise that (2) the promisor should reasonably expect to cause the promisee to change her position and (3) that does cause the promisee to change her position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise. <u>King v. Riveland</u>, 125 Wn.2d 500, 506 (1994).

The only promise in the record that Thomas-Danzy can base her promissory estoppel claim on is the promise she claims Laurie Taylor made to her to protect her position and seniority as a CEA. This promise cannot support Thomas-Danzy's promissory estoppel claim. When viewed in the light most favorable to Thomas-Danzy, this statement is vague and contains no specific terms or conditions informing Thomas-Danzy when, and under what circumstances, the District or Ms. Taylor would protect Thomas-Danzy's job. Thus, no reasonable trier of fact could conclude that the District or Laurie Taylor should have reasonably expected such a vague and indefinite promise to cause Thomas-Danzy to change her position and refrain from seeking alternative employment. Likewise, Thomas-Danzy was not justified in relying on such a vague and indefinite assurance to protect her job.

Moreover, the record does not show that, because Laurie Taylor assured Thomas-Danzy that her job would be protected, Thomas-Danzy detrimentally changed her plans to seek alternative employment, either in general or during the October 20, 2008 to December 5, 2008 period the District sent her home without pay. Indeed, Thomas-Danzy has never looked for another job to

ORDER -17

replace her job with the District. *See* Jackson Decl. Ex. 1, at 12 (Thomas-Danzy Dep. Vol. 2, p. 143-44) ("I've *never looked for another job outside of the Seattle School District* not being [my] primary job. I've looked for second part-time jobs and may have turned down part-time jobs but not replacing my primary [job].") (emphasis added). Because she never looked for a job to replace her primary employment as a CEA, Thomas-Danzy cannot show that she changed her position in reliance on Laurie Taylor's assurances.

Lastly, failing to enforce the promise, if there was one, would not result in injustice. The District never fired Thomas-Danzy, and the District employed and paid Thomas-Danzy after the October 20, 2008 to December 5, 2008 period it sent her home without pay. Moreover, Thomas-Danzy remains employed by the District to this day.

**Conclusion**

For the foregoing reasons, the Court DENIES the District's motion to strike Thomas-Danzy's response as untimely, docket no. 202. The Court also GRANTS IN PART and DENIES IN PART the District's motion to strike portions of Thomas-Danzy's response, docket no. 202; accordingly, the Court STRIKES only Exhibit 5 from Thomas-Danzy's response. Finally, the Court GRANTS the District's motion for summary dismissal of Thomas-Danzy's claims, docket no. 193; and DISMISSES this case with prejudice, on the grounds that plaintiff Thomas-Danzy (1) cannot, as a matter of law, establish a prima facie EPA claim; (2) fails to provide evidence that the District breached an implied-in-fact employment contract with her; and (3) fails to provide evidence that establishes a promissory estoppel claim.

Pursuant to Fed. R. Civ. P. 54(b), the Court finds that there is no just reason to delay entry of a final judgment as to the plaintiff Thomas-Danzy's claims. Accordingly, the Clerk is DIRECTED to enter partial judgment in favor of the defendant, Seattle School District No. 1, and against the plaintiff, Demetrice Thomas-Danzy, and to send copies of this Order to the counsel of record for Seattle School District No. 1 and Demetrice Thomas-Danzy.

IT IS SO ORDERED.

DATED this 16th day of February, 2012.

*[signature: Thomas S. Zilly]*

THOMAS S. ZILLY
United States District Judge