1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6   BEVERLY RAINES; SANDRA BOSLEY;
    CHALICE STALLWORTH; AUDREY
7   WEAVER; JACQUES JOHNSON; and
    MARCUS PERKINS,

8                                                       C09-203 TSZ

                        Plaintiffs,
9                                                       ORDER RE: PLAINTIFFS
                                                        CHALICE STALLWORTH
        v.                                              and AUDREY WEAVER
10

11  SEATTLE SCHOOL DISTRICT NO. 1,

                        Defendant.
12

13          THIS MATTER comes before the Court on defendant's motion for summary

14  judgment, docket no. 250.  This Order relates solely to the portion of defendant's motion

15  seeking summary judgment as to the claims of plaintiffs Chalice Stallworth and Audrey

16  Weaver.

17  **Background**

18  **A.    Chalice Stallworth**

19          According to the Third Amended Complaint, Chalice Stallworth is a black woman

20  over 40 years of age who was employed by defendant Seattle School District No. 1

21  (the "District") from 1982 until 2008, as a certificated teacher.  Third Am. Compl. at

22  ¶¶ 6.2, 6.3, & 6.23 (docket no. 132).  In June 2006, while preparing for a kindergarten

23

graduation, Stallworth was injured as a result of a fall from a ladder.  *Id.* at ¶ 6.5;

Stallworth Decl. at 1 (docket no. 261-1).  Stallworth alleges that she requested but was

denied part-time work as an accommodation for her physical condition,[1] and was placed

on "injury on duty" leave for the 2006-2007 school year.  Stallworth Decl. at 1; *see* Letter

from Superintendent Maria L. Goodloe-Johnson, Ph.D. at 1, Ex. 8 to Jackson Decl.

(docket no. 213-8) [hereinafter "G-J Ltr."].  During this time, Stallworth received

workers' compensation benefits (1/3 of her salary) from the Washington Department of

Labor and Industries.  Stallworth Decl. at 1.

During the 2007-2008 school year, Stallworth was on unpaid health leave.  *See*

G-J Ltr. at 1.  Stallworth contends that she had asked for a part-time teaching position,

but was told her options were to resign or be placed on unpaid health or general leave.

Stallworth Decl., docket no. 261 at 2.  She also contends the District's refusal to

accommodate her broke any contract with the District.  *Id.*

From November 2007 to June 2008, Stallworth participated in a paid internship

with the Lake Washington School District ("LWSD"); the internship was part of a school

psychologist certification program through Washington State University ("WSU").  *Id.*;

---

[1] The District disputes whether Stallworth was "disabled" within the meaning of the Rehabilitation Act, which employs the same standards as the Americans with Disabilities Act of 1990 (the "ADA"), *see* 29 U.S.C. § 794(d), and/or the WLAD, which contains a broader definition of disability, *see Delaplaine v. United Airlines, Inc.*, 518 F. Supp. 2d 1275, 1278 (W.D. Wash. 2007) ("unlike the ADA, the WLAD, as amended, does not require that a disability substantially limit a major life activity, but only that it substantially limit the ability to perform one's job").  The parties have not briefed this issue or provided any documentation concerning Stallworth's injuries or ability to perform her job or major life activities. The record contains only Stallworth's assertion that her doctors had recommended part-time work.  This allegation, however, creates a genuine issue of material fact concerning whether Stallworth was disabled within the meaning of the Rehabilitation Act and/or the WLAD.

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 2

1   *see* G-J Ltr. at 2; *see also* Letter from LWSD Human Resource Coordinator, Ex. 7 to

2   Jackson Decl. (docket no. 213-7) ("This letter is to verify employment of Chalice

3   Stallworth from 11/6/07 to 6/17/08 on a 0.3 certificated contract during the 2007-2008

4   school year."). Stallworth alleges that the internship involved 10 hours of work each

5   week, and that she received a stipend of $700 or $800. Stallworth Decl. at 2. The

6   District believes that Stallworth's internship entailed 1200 hours, performed over 136

7   days, representing over a full-time (1.1 FTE) work load. G-J Ltr. at 2.

8          For the 2008-2009 school year, Stallworth was offered a teaching position at

9   Highland Park Elementary School ("Highland Park"). Stallworth Decl. at 3; G-J Ltr.

10  at 1; *see also* Ex. 6 to Jackson Decl. (docket no. 213-6). Stallworth participated in

11  professional development (teacher preparation) activities on August 26 and 27, 2008, but

12  took bereavement leave on August 28, 2008. Stallworth Decl. at 3; G-J Ltr. at 1. On

13  September 2, 2008, Stallworth did not report to work. G-J Ltr. at 1. Stallworth contends

14  that, prior to this first day of school, she had again requested a part-time assignment, but

15  was advised that the Highland Park position was full time. Stallworth Decl. at 3.

16         On September 4, 2008, the District sent Stallworth a letter directing her to report

17  to work or face progressive discipline for job abandonment and/or unauthorized leave.

18  G-J Ltr. at 1; *see* Stallworth Decl. at 3 (describing the letter from Labor and Employee

19  Relations Manager Misa Garmoe). On September 9, 2008, Stallworth met with Garmoe,

20  Human Resource Senior Analyst Sue Means, and union representative Ben Ibale. G-J

21  Ltr. at 2. Ibale suggested that Stallworth be permitted to take an additional year of part-

22  time leave, and Means initiated the process of identifying a part-time certificated position

23

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 3

1  for Stallworth.  G-J Ltr. at 2.  During this period, Means learned of Stallworth's paid

2  internship with LWSD.  *Id.*

3        On October 14, 2008, Garmoe sent Stallworth a letter notifying her that Garmoe

4  intended to recommend termination based on job abandonment, unauthorized leave, and

5  violation of the Code of Professional Conduct for Education Practitioners.[2]  *Id.*  On

6  October 21, 2008, Stallworth met again with Garmoe, Means, and Ibale.  *Id.*  During the

7  meeting, Stallworth attempted to clarify that she did not perform all 1200 required hours

8  of her internship during the 2007-2008 school year at LWSD.  *Id.*  The District requested

9  that Stallworth sign a release so that it could obtain a complete log from WSU concerning

10 Stallworth's internship hours.  *Id.* at 3.  According to the District, Stallworth refused to

11 provide such release.  *Id.*

12       The District ultimately concluded that Stallworth "worked and [was] paid under a

13 certifi[cat]ed contract in violation of the terms of [her] leave, the [collective bargaining

14 agreement] and Washington State Law."  *Id.*  On December 5, 2008, the Superintendent

15 sent Stallworth a letter indicating that the District was exercising its right to "void,

16 cancel, rescind and/or nullify" the employment contract with Stallworth because it was

17

18 [2] The Code of Professional Conduct appears in WAC Chapter 181-87.  Which provision or provisions the
19 District alleged Stallworth violated is unclear.  RCW 28A.405.210, however, provides in relevant part:
   "No teacher . . . or other certificated employee, holding a position as such with a school district . . . shall
   be employed except by written order of a majority of the directors of the district at a regular or special
20 meeting thereof, nor unless he or she is the holder of an effective teacher's certificate . . . .  No contract
   shall be offered by any board for the employment of any employee who has previously signed an
21 employment contract for that same term in another school district of the state of Washington unless such
   employee shall have been released from his or her obligations under such previous contract by the board
22 of directors of the school district to which he or she was obligated.  Any contract signed in violation of
   this provision shall be void."

23

1   renewed for the 2008-2009 school year "by fraud or mistake."  G-J Ltr. at 3-4.

2   Stallworth's employment was terminated effective August 29, 2008.  *Id.* at 4.

3          In this litigation, Stallworth asserts the following claims:  (i) failure to

4   accommodate in violation of the Rehabilitation Act of 1973; (ii) discrimination on the

5   basis of age, gender, race, and disability in violation of the WLAD; (iii) retaliation in

6   violation of the WLAD; and (iv) defamation.  In response to the District's motion for

7   summary judgment, Stallworth has presented no evidence to support her claims of

8   discrimination on the basis of age or gender and retaliation.  Indeed the crux of her

9   grievance with the District is that she was not afforded reasonable accommodations and

10  that "non-Black employees with medical conditions are afforded reasonable

11  accommodations for their disabilities."  Stallworth Decl. at 5.  Thus, the Court GRANTS

12  defendant's motion for summary judgment as to Stallworth's claims of discrimination on

13  the basis of age or gender and retaliation, and DISMISSES such claims with prejudice.

14  Stallworth's remaining claims, namely failure to accommodate in violation of the

15  Rehabilitation Act, discrimination on the basis of race and/or disability, and defamation,

16  are addressed in the discussion section of this Order.

17  **B.   <u>Audrey Weaver</u>**

18         According to the Third Amended Complaint, Audrey Weaver is a black woman

19  over 40 years of age, who worked for the District as a security specialist for approxi-

20  mately twenty years.  Third Am. Compl. at ¶¶ 10.2 & 10.3 (docket no. 132).  In the fall of

21  2006, Weaver sought mental health treatment through the District's Employee Assistance

22  Program.  *Id.* at ¶ 10.4.  Weaver was diagnosed and treated for an anxiety disorder.  *<u>See</u>*

23

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 5

McClung Report at 3, Ex. G to Farza Decl. (docket no. 262-1); _see also_ Exs. 1-4 to

Garmoe Decl. (docket no. 222-1).  The District concedes that Weaver is a qualified

individual with a disability or handicap within the meaning of the Rehabilitation Act.

Motion at 10 (docket no. 250).  At the time Weaver became disabled, she was working at

Chief Sealth High School ("Chief Sealth").

On September 11, 2007, Weaver's treating psychiatrist recommended a 30-day

leave of absence.  Ex. 1 to Garmoe Decl.  On October 2, 2007, and on November 1, 2007,

Weaver's treating mental health counselor recommended extending the leave, first for

another 30 days and then until the end of 2007.  Ex. 2 & 3 to Garmoe Decl.  On

December 11, 2007, Weaver's counselor indicated that Weaver was "functioning better"

and that Weaver felt she was capable of returning to work.  Ex. 4 to Garmoe Decl.  In

light of Weaver's concerns about the loss of wages and benefits, the counselor approved

Weaver's return to work.  _Id._

In February 2008, Weaver made a written request for disability accommodation.

_See_ Ex. 5 to Garmoe Decl.  She asked to be "allowed to remain in a secluded place and

take [her] medicine" to regain her composure after a panic attack, and to be "allowed to

keep [her] necessary medicines on [her]."  _Id._  She also requested a 30-40 minute break

after the second lunch period, when students have returned to class, to regain her energy

in time for the sixth period.  _Id._  Whether she intended for this break to be her regular

lunch break or an additional break is unclear.  Finally, she indicated her intent to request

a transfer to the "north-end" for the next school year.  _Id._

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 6

1        On April 9, 2008, Weaver missed a work meeting, and on the following day,

2   April 10, 2008, she was placed on administrative leave with pay.  *See* Exs. 6 & 7 to

3   Garmoe Decl.  On May 6, 2008, Weaver submitted to a "fitness-for-duty" evaluation by

4   forensic psychiatrist Mark R. McClung, M.D., P.C.  Exs. 8 & 9 to Garmoe Decl.

5   Dr. McClung, who performed the evaluation at the District's request, observed that

6   Weaver had negative feelings about John Boyd, then Principal at Chief Sealth, and

7   indicated that Weaver "would like to be accommodated for her problems with the

8   principal by being transferred to a different school."  McClung Report at 1-2, Ex. G to

9   Farza Decl. (docket no. 262-1).  Dr. McClung opined that Weaver's anxiety could be

10  accommodated by (i) allowing her to take brief, unscheduled breaks, for up to 30 minutes

11  per day, which would permit her to leave her duty station and calm herself, and

12  (ii) having other security staff available for back-up during times when she experiences

13  anxiety symptoms.  *Id.* at 3-4.  Dr. McClung also suggested that Weaver might benefit

14  from mediated discussions with Principal Boyd to attempt to resolve their conflicts and/or

15  supervision by the vice-principal instead of the principal.  *Id.* at 4.  Dr. McClung further

16  concluded that, because Weaver's "anxiety attacks are not 'caused' by the presence of the

17  staff with whom she's disgruntled," Weaver did not "require the accommodation of a

18  transfer to another school."  *Id.* at 3.

19       On May 13, 2008, the District indicated that it would provide the following

20  accommodations:

21      &bull;  Weaver could "take brief unscheduled breaks for up to 30 minutes per
22         day" provided that Weaver advised Assistant Principal Angie Thomas

23

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 7

(or Principal Boyd) of the need to invoke this accommodation, at which time Thomas (or Boyd) would identify a private space for Weaver's use;

- Weaver could "carry medication for [her] anxiety disorder with [her] at school," but must refrain from leaving the medication "in a place that could be accessed by students"; and

- Weaver could take her regular 30-minute lunch break after 12:25 p.m. (after the second lunch period) but would be expected to provide assistance in the event of an emergency; she would be permitted to resume her break after the emergency abated.

Ex. 10 to Garmoe Decl.  The District also arranged for Catherine Erickson, manager of the Employee Assistance Program ("EAP"), to facilitate a return-to-work meeting between Weaver and Boyd on May 19, 2008.  *Id.*  This meeting appears to have occurred as scheduled, and some progress was made, including Principal Boyd's agreement to a transfer if Weaver's manager approved of one.  Ex. D to Farza Decl. (docket no. 262-1 at 17).  On May 20, 2008, however, Weaver called the Safety and Security Department to indicate that she could not report to work because of a "mental breakdown."  Ex. 11 to Garmoe Decl.

On May 21, 2008, Weaver's treating psychiatrist recommended that Weaver be transferred to a different school.  Ex. 12 to Garmoe Decl.  On June 5, 2008, the District indicated in a letter to David Westberg, Business Manager for the International Union of Operating Engineers, Local No. 609, that "Ms. Weaver's request for a change in work site as an accommodation to her anxiety disorder was considered and rejected."  Ex. 13 to Garmoe Decl.  On September 1, 2008, Weaver's mental health counselor released her to return to work.  Ex. 14 to Garmoe Decl.

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 8

1    On September 12, 2008, Weaver signed a pre-litigation notice of tort claim

2    addressed to Pegi McEvoy, Safety and Security Manager.  Ex. 1 to Jackson Decl. (docket

3    no. 221-1).  In the notice, which was on the letterhead of previous counsel Brenda J.

4    Little, Weaver indicates her belief that she was constructively discharged as a result of

5    the District's failure to "acknowledge [her] debilitating mental illness," making the

6    working conditions so intolerable that she was forced to resign.  _Id._  The District

7    responded to this notice by letter dated September 26, 2008.  Ex. 16 to Garmoe Decl.  In

8    its response, the District explained that, because Weaver did not complete an Employee

9    Leave Request Form, the District was unable to obtain current medical information from

10   Weaver's health care providers, and therefore had "no choice but to consider [her]

11   position abandoned and to accept [her] resignation."  _Id._

12   On October 16, 2008, Human Resources Manager Misa Garmoe sent Weaver a

13   letter indicating that she was contemplating terminating Weaver's employment for failing

14   to report to work since September 10, 2008.  Ex. 15 to Garmoe Decl.  Garmoe also

15   referenced Weaver's lack of response to the letter dated September 26, 2008, and

16   Weaver's report to other District personnel that she had secured employment with the

17   City of Seattle.  _Id._  Garmoe invited Weaver to meet on October 23, 2008, to discuss the

18   situation.  _Id._  On October 23, 2008, when Weaver failed to appear for the scheduled

19   meeting, Garmoe sent Weaver a letter discharging her.  _Id._

20   In this litigation, Weaver asserts the following claims:  (i) failure to accommodate

21   in violation of the Rehabilitation Act of 1973; (ii) discrimination on the basis of race and

22   disability in violation of the WLAD; (iii) retaliation in violation of the WLAD; and

23

1   (iv) defamation.  In response to the District's motion for summary judgment,[3] Weaver

2   has presented no evidence to support her claim of retaliation,[4] and the Court GRANTS

3   defendant's motion for summary judgment as to such claim.  Weaver's retaliation claim

4   is DISMISSED with prejudice.  Her other claims are addressed in the discussion section

5   of this Order.

6   **Discussion**

7   **A.      Standard for Summary Judgment**

8          The Court shall grant summary judgment if no genuine issue of material fact exists

9   and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

10  The moving party bears the initial burden of demonstrating the absence of a genuine issue

---

12  [3] The District has objected to Exhibits A, B, and F, and portions of Exhibit D to the Declaration of Oliver
    Farza, which was filed in support of Weaver's opposition to the District's motion for summary judgment.
13  _See_ Reply at 4 (docket no. 263).  Exhibit A is a signed statement by Principal Boyd, Exhibits B and F
    consist of an e-mail and several letters by other employees of the District, and Exhibit D contains notes
    kept by EAP Manager Erickson.  The Court presumes that, if the authors of these documents were called
14  as witnesses, they would testify consistently with their respective writings, which appear to be based on
    personal knowledge.  The Court has therefore considered the materials contained in Exhibits A, B, D, and
    F to the Farza declaration.  _See_ _Fraser v. Goodale_, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary
15  judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the
    admissibility of its contents."); _see also_ Fed. R. Civ. P. 56(c)(2) ("A party may object that the material
16  cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

    [4] In Weaver's response brief, counsel argues that Weaver was retaliated against for speaking against the
17  proposed merger or "co-location" of Chief Sealth and Denny Middle School.  According to counsel,
    Weaver raised concerns about the potential for inappropriate sexual contact between high school and
18  middle school students if the schools were situated in close proximity.  Counsel's assertions (and his
    representations about deposition testimony) are not evidence, and the Court has considered counsel's
19  remarks only for the purpose of understanding the nature of Weaver's retaliation claim.  Weaver's
    retaliation claim is not premised on any complaint she made about discriminatory treatment, which would
20  be actionable under the WLAD, but is instead based on Weaver's opposition to the District's plan to
    combine the high school and middle school campuses.  Weaver, however, has not pleaded any claim for
    retaliation relating to the exercise of First Amendment rights, nor could she in these circumstances, given
21  that her expressions were made within the scope of her employment as a security specialist.  _See_ _Garcetti
    v. Ceballos_, 547 U.S. 410 (2006); _Eng v. Cooley_, 552 F.3d 1062, 1070-71 (9th Cir. 2009) (a public
22  employee claiming a First Amendment violation must prove _inter alia_ that he or she spoke outside his or
    her capacity as a governmental employee); _see also_ _Freitag v. Ayers_, 468 F.3d 528 (9th Cir. 2006).

23

    ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 10

1   of material fact.  _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986).  A fact is material if

2   it might affect the outcome of the suit under the governing law.  _Anderson v. Liberty_

3   _Lobby, Inc._, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the

4   adverse party must present "affirmative evidence," which "is to be believed" and from

5   which all "justifiable inferences" are to be favorably drawn.  _Id._ at 255, 257.  When the

6   record, however, taken as a whole, could not lead a rational trier of fact to find for the

7   non-moving party, summary judgment is warranted.  _See Beard v. Banks_, 548 U.S. 521,

8   529 (2006) (Rule 56 "mandates the entry of summary judgment, after adequate time for

9   discovery and upon motion, against a party who fails to make a showing sufficient to

10   establish the existence of an element essential to that party's case, and on which that

11   party will bear the burden of proof at trial." (quoting _Celotex_, 477 U.S. at 322)).

12   **B.**    **Rehabilitation Act**

13       **1.**    **Chalice Stallworth**

14        A person with a disability may present Rehabilitation Act claims under two

15   different theories:  (i) disparate treatment; and (ii) failure to accommodate.  In moving for

16   summary judgment on Stallworth's Rehabilitation Act claim, the District misinterprets

17   her claim as alleging disparate treatment rather than failure to accommodate.  _Compare_

18   Motion at 11 (docket no. 250) (reciting the standard for disparate treatment claims) _with_

19   Third Am. Compl. at ¶¶ 13.4 & 13.4[sic] (docket no. 132-1) ("plaintiffs sought

20   reasonable accommodations" and "[f]or reasons not known, agents of Defendant failed to

21   provide these or other reasonable accommodations"); _see generally Walton v. U.S._

22   _Marshals Serv._, 492 F.3d 998, 1005 (9th Cir. 2007) (to state a prima facie case of

23

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 11

1   disparate treatment under the Rehabilitation Act, a plaintiff must demonstrate that

2   "(1) she is a person with a disability, (2) who is otherwise qualified for employment, and

3   (3) suffered discrimination because of her disability").  The District has therefore not

4   addressed the merits of Stallworth's failure to accommodate claim.

5          Under the Rehabilitation Act, the burden is on the plaintiff to prove he or she is a

6   "qualified handicapped individual" and to make a "facial showing that reasonable

7   accommodation is possible."  _Buckingham v. United States_, 998 F.2d 735, 739-40 (9th

8   Cir. 1993).  If the plaintiff makes the requisite showing, the burden shifts to the employer

9   to demonstrate that the requested accommodation would impose "an undue hardship" on

10  its operations.  _See id._; _see also_ 28 C.F.R. § 42.511(a).  The District contends that it had a

11  legitimate, non-discriminatory reason for discharging Stallworth, namely violation of

12  state law, the collective bargaining agreement, and/or the applicable professional code by

13  working for another school district while under contract and on health leave.  Stallworth,

14  however, alleges that, even before she secured the internship with LWSD, the District

15  denied her request for an accommodation of part-time work.  The District has provided

16  no explanation for such denial, and a reasonable inference must be drawn in Stallworth's

17  favor, as the non-moving party, that providing her a part-time position was "possible."

18         Based on the current record, the Court concludes that Stallworth has presented a

19  triable issue as to whether she was disabled and otherwise qualified, and whether the

20  accommodation she requested was reasonable.  The Court therefore DENIES defendant's

21  motion for summary judgment as to Stallworth's failure-to-accommodate claim under the

22  Rehabilitation Act.

23

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 12

2. **Audrey Weaver**

With regard to Weaver's Rehabilitation Act claim, the District likewise misapplies the disparate treatment analysis, arguing that Weaver has failed to demonstrate she suffered discrimination solely because of her disability[5] and that Weaver has presented no evidence tending to show the District's reason for discharging her, namely for failure to report to work, was pretextual.  Weaver's claim, however, as stated in her pre-litigation notice and in the operative pleading, is that she was denied requested accommodations, particularly transfer to another school.  Because the District has conceded that Weaver was a "qualified handicapped individual," Weaver's only burden at this juncture is to show that her requested accommodations were reasonable and possible.  *Buckingham*, 998 F.2d at 740.

Weaver's counsel has represented, and the District has not disputed, that Weaver was transferred to Madrona Middle School in September 2008.  Response at 8 (docket no. 262); *see* Reply at 4 (docket no. 263).  The record reflects no reason why this transfer or a different reassignment could not have occurred earlier, closer to the time when Weaver requested the accommodation, and the Court concludes that Weaver has made a

---

[5] The District contends Weaver's claim that she was treated less favorably than non-minority disabled individuals is not cognizable under the Rehabilitation Act, which requires that the alleged discrimination be "solely by reason of . . . disability."  29 U.S.C. § 794(a).  The Rehabilitation Act is indeed narrower than the ADA, and does not encompass mixed-motive scenarios.  *See Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1065 & n.63 (9th Cir. 2005) (adopting the "motivating factor" standard for claims under the ADA, which was intended "to reach beyond the Rehabilitation Act to cover situations in which discrimination on the basis of disability is one factor, but not the only factor, motivating an adverse employment action" (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir. 2000))).  Neither Stallworth nor Weaver may pursue under the Rehabilitation Act the theory that the District gave preferential treatment to non-minority disabled persons.

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 13

sufficient showing to shift the burden to the District to demonstrate that a transfer would have imposed "an undue hardship" on its operations. *See Buckingham*, 998 F.2d at 740. In connection with its motion for summary judgment, the District has not even addressed this subject, and the Court therefore DENIES defendant's motion as to Weaver's failure-to-accommodate claim under the Rehabilitation Act.

## C.   Washington Law Against Discrimination

### 1.   Disparate Treatment

Under the WLAD, in the absence of direct evidence of discrimination, courts employ the three-part burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Hines v. Todd Pac. Shipyards Corp.*, 127 Wn. App. 356, 370-71, 112 P.3d 522 (2005). To present a prima facie case of disparate treatment, a plaintiff must prove that (i) he or she is a member of a protected class, (ii) he or she was treated less favorably than a similarly situated non-protected employee, and (iii) the non-protected employee was doing the same work. *See Clarke v. Office of the Attorney Gen.*, 133 Wn. App. 767, 788-89, 138 P.3d 144 (2006). Only if a plaintiff presents sufficient evidence of a prima facie case does the burden shift to the employer to provide evidence of legitimate, nondiscriminatory reasons for its actions. *Hines*, 127 Wn. App. at 371.

The final burden rests on the plaintiff to produce evidence that the asserted reasons are merely a pretext for discrimination. *Id.* To establish pretext, the plaintiff must put forward evidence indicating that the articulated nondiscriminatory reasons are "unworthy of belief." *Id.* at 372. "Speculation and belief are insufficient to create a fact issue as to

1    pretext.  Nor can pretext be established by merely conclusory statements of a plaintiff

2    who feels that he has been discriminated against."  <u>Id.</u>  Moreover, summary judgment

3    may be granted in favor of an employer even when the employee has created a weak

4    issue of fact concerning pretext, if abundant, uncontroverted, independent evidence

5    indicates that no discrimination occurred.  <u>E.g.</u>, <u>Tyner v. Wash.</u>, 137 Wn. App. 545, 564,

6    154 P.3d 920 (2007).

7           In this case, neither Stallworth nor Weaver present the evidence required to

8    support a disparate treatment theory, whether based solely on race or disability or on a

9    combination of race and disability.  Neither plaintiff has identified even a single

10   comparator, <u>i.e.</u>, a similarly situated non-protected employee who was treated more

11   favorably, and neither plaintiff has proffered any statistical evidence indicating that the

12   District treated non-minority, non-disabled, or non-minority disabled persons differently

13   than their minority and/or disabled counterparts.  Neither Stallworth nor Weaver has

14   presented a prima facie case of disparate treatment.  In contrast, the District has

15   articulated legitimate, non-discriminatory reasons for discharge, namely Stallworth's

16   improper performance of a certificated contract with another school district while on

17   health leave and Weaver's abandonment of her position, and neither plaintiff has put

18   forward non-speculative evidence indicating that such reasons are pretextual.  The Court

19   therefore GRANTS defendant's motion for summary judgment as to Stallworth's and

20   Weaver's WLAD claims of disparate treatment based on race and/or disability and

21   DISMISSES such claims with prejudice.

22

23

1

    **2.**    <u>**Failure to Accommodate**</u>

2

    A failure-to-accommodate claim under the WLAD is analyzed under a standard

3

similar to the one applied to Rehabilitation Act claims.  Washington courts engage in two

4

inquiries:  (i) whether the employee was disabled within the meaning of the WLAD; and

5

(ii) whether the employer met its affirmative obligation to reasonably accommodate the

6

disability.  <u>*See*</u> <u>*Delaplaine v. United Airlines, Inc.*</u>, 518 F. Supp. 2d 1275, 1277 (W.D.

7

Wash. 2007) (citing <u>*Pulcino v. Fed. Express Corp.*</u>, 141 Wn.2d 629, 640, 9 P.3d 787

8

(2000)).  For the same reasons that Stallworth and Weaver have survived the District's

9

motion for summary judgment as to their Rehabilitation Act claims, the Court concludes

10

that triable issues exist as to their failure-to-accommodate claims under the WLAD.  With

11

respect to Stallworth, however, the Court must separately analyze the District's argument

12

that her state law claims are barred because she did not comply with RCW 4.96.020.

13

**D.**    <u>**Pre-Litigation Notice of Claims**</u>

14

    RCW 4.96.020 requires that any claim for damages against a local governmental

15

entity, arising out of tortious conduct, be presented, at least 60 days prior to filing suit,

16

and within the applicable period of limitations for such claim, to the agent appointed to

17

receive such claim.  In 2009, RCW 4.96.020 was amended to incorporate a "substantial

18

compliance" standard with respect to both the content of claim notices and the procedures

19

for presenting them; the Court has previously held that the 2009 amendment applies

20

retroactively.  <u>*Bell v. City of Tukwila*</u>, 2011 WL 1045586 (W.D. Wash. Mar. 21, 2011).

21

22

23

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 16

1   The District argues that Chalice Stallworth's tort claim form was not timely

2   submitted.[6]  Stallworth undisputedly failed to present the requisite notice to the District

3   before commencing this action.  Rather, in October 2010, over a year and a half after

4   initiating this lawsuit, Stallworth submitted to the District a document in the form

5   outlined in RCW 4.96.020.  The District argues that presenting the tort claim form after

6   the litigation has begun does not constitute "substantial compliance" because such

7   sequence of events gave no advance notice to the District to enable it to investigate the

8   claim and potentially resolve it before being sued, which is the underlying purpose of

9   RCW 4.96.020.  _See_ _Bell_, 2011 WL 1045586 at *1.  Stallworth's October 2010 notice,

10   however, was presented before the Third Amended Complaint was filed.

11   All plaintiffs were originally represented in this matter by Brenda Little.  The

12   Court removed Little from this case after she failed _inter alia_ to attend Stallworth's

13   deposition, which was noted for September 10, 2009, and for which Stallworth herself

14   appeared.  _See_ Order (docket no. 59); Order (docket no. 47); _see also_ Jackson Decl. at

15   ¶¶ 2 & 3 and Exs. 1 & 2 (docket no. 42).  After Little's removal as counsel of record,

16   several plaintiffs sought voluntary dismissal of their claims without prejudice for the

17   purpose of refiling their suits and restoring Little as their attorney; the Court rejected

18   these attempts to circumvent its Order.  _See_ Minute Order (docket no. 65); _see also_

19   Minute Order (docket no. 74).  Stallworth was not one of the plaintiffs who moved to

20   dismiss without prejudice after Little's removal, but had she done so, her request would

---

22   [6] The District does not challenge the sufficiency of Audrey Weaver's pre-litigation notice.

23

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 17

1   likewise have been denied, even if the reason for such dismissal was to rectify the lack of

2   compliance with RCW 4.96.020.  In light of the complications resulting from Little's

3   involvement in this matter, with respect to which Stallworth is not at fault, and the fact

4   that the October 22, 2010 notice was presented before the Third Amended Complaint was

5   filed, the Court concludes there was sufficient compliance and the defendant's motion for

6   summary judgment on the basis of her failure to present a pre-litigation notice of claim is

7   DENIED.

8   **E.    Defamation**

9          In moving for summary judgment with respect to Stallworth's defamation claim,

10  the District relied solely on her noncompliance with RCW 4.96.020.  As to Weaver's

11  defamation claim, the District appears not to have moved for summary judgment at all.

12  The parties have therefore not addressed the merits of the defamation claims.[7]  Thus,

13  defendant's motion for summary judgment is DENIED as to plaintiffs' defamation

14  claims.

15  **Conclusion**

16         Defendant's motion for summary judgment, docket no. 250, is GRANTED in part

17  and DENIED in part as to the claims of plaintiffs Chalice Stallworth and Audrey Weaver.

18

19  [7] To state a prima facie case of defamation, a private plaintiff must show (i) the statement at issue is false
    or leaves a false impression, (ii) the statement was contained in an unprivileged publication to a third
20  party, (iii) the publisher had fault amounting at least to negligence, and (iv) damages from the publication.
    _See_ _Mark v. Seattle Times_, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981) (citing Restatement (Second) of
    Torts § 558 (1977)).  In their trial briefs the parties are directed to address the basis for the defamation
21  claims and plaintiffs should identify any written documents that may give rise to such claims.  In addition,
    the parties are directed to address each of the elements of this claim and specifically whether letters of
22  termination directed to a plaintiff would constitute an unprivileged publication to a third party under
    Washington law.

23

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 18

Stallworth's claims under the WLAD for disparate treatment on the basis of age, gender, race, and/or disability and for retaliation are DISMISSED with prejudice.  Weaver's claims under the WLAD for disparate treatment on the basis of race and/or disability and for retaliation are DISMISSED with prejudice.  Defendant's motion is otherwise DENIED.  Stallworth and Weaver each have the following claims remaining for trial: (i) failure to accommodate in violation of the Rehabilitation Act and/or the WLAD; and (ii) defamation.

The Clerk is DIRECTED to send copies of this Order to counsel for the District and counsel for Chalice Stallworth and Audrey Weaver.

IT IS SO ORDERED.

DATED this 7th day of February, 2013.

THOMAS S. ZILLY
United States District Judge