UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BEVERLY RAINES; SANDRA BOSLEY; CHALICE STALLWORTH; AUDREY WEAVER; JACQUES JOHNSON; and MARCUS PERKINS,<br><br>Plaintiffs,<br><br>v.<br><br>SEATTLE SCHOOL DISTRICT NO. 1,<br><br>Defendant. | C09-203 TSZ<br><br>ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER |

THIS MATTER comes before the Court on defendant's motion for summary judgment, docket no. 250. This Order relates solely to the portion of defendant's motion seeking summary judgment as to the claims of plaintiffs Chalice Stallworth and Audrey Weaver.

**Background**

**A.**     **Chalice Stallworth**

According to the Third Amended Complaint, Chalice Stallworth is a black woman over 40 years of age who was employed by defendant Seattle School District No. 1 (the "District") from 1982 until 2008, as a certificated teacher. Third Am. Compl. at ¶¶ 6.2, 6.3, & 6.23 (docket no. 132). In June 2006, while preparing for a kindergarten

graduation, Stallworth was injured as a result of a fall from a ladder. <u>Id.</u> at ¶ 6.5; Stallworth Decl. at 1 (docket no. 261-1).  Stallworth alleges that she requested but was denied part-time work as an accommodation for her physical condition,[1] and was placed on "injury on duty" leave for the 2006-2007 school year.  Stallworth Decl. at 1; <u>see</u> Letter from Superintendent Maria L. Goodloe-Johnson, Ph.D. at 1, Ex. 8 to Jackson Decl. (docket no. 213-8) [hereinafter "G-J Ltr."].  During this time, Stallworth received workers' compensation benefits (1/3 of her salary) from the Washington Department of Labor and Industries.  Stallworth Decl. at 1.

During the 2007-2008 school year, Stallworth was on unpaid health leave.  <u>See</u> G-J Ltr. at 1.  Stallworth contends that she had asked for a part-time teaching position, but was told her options were to resign or be placed on unpaid health or general leave.  Stallworth Decl., docket no. 261 at 2.  She also contends the District's refusal to accommodate her broke any contract with the District.  <u>Id.</u>

From November 2007 to June 2008, Stallworth participated in a paid internship with the Lake Washington School District ("LWSD"); the internship was part of a school psychologist certification program through Washington State University ("WSU"). <u>Id.</u>;

---

[1] The District disputes whether Stallworth was "disabled" within the meaning of the Rehabilitation Act, which employs the same standards as the Americans with Disabilities Act of 1990 (the "ADA"), <u>see</u> 29 U.S.C. § 794(d), and/or the WLAD, which contains a broader definition of disability, <u>see</u> <u>Delaplaine v. United Airlines, Inc.</u>, 518 F. Supp. 2d 1275, 1278 (W.D. Wash. 2007) ("unlike the ADA, the WLAD, as amended, does not require that a disability substantially limit a major life activity, but only that it substantially limit the ability to perform one's job").  The parties have not briefed this issue or provided any documentation concerning Stallworth's injuries or ability to perform her job or major life activities.  The record contains only Stallworth's assertion that her doctors had recommended part-time work.  This allegation, however, creates a genuine issue of material fact concerning whether Stallworth was disabled within the meaning of the Rehabilitation Act and/or the WLAD.

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 2

1  *see* G-J Ltr. at 2; *see also* Letter from LWSD Human Resource Coordinator, Ex. 7 to
2  Jackson Decl. (docket no. 213-7) ("This letter is to verify employment of Chalice
3  Stallworth from 11/6/07 to 6/17/08 on a 0.3 certificated contract during the 2007-2008
4  school year."). Stallworth alleges that the internship involved 10 hours of work each
5  week, and that she received a stipend of $700 or $800. Stallworth Decl. at 2. The
6  District believes that Stallworth's internship entailed 1200 hours, performed over 136
7  days, representing over a full-time (1.1 FTE) work load. G-J Ltr. at 2.

8        For the 2008-2009 school year, Stallworth was offered a teaching position at
9  Highland Park Elementary School ("Highland Park"). Stallworth Decl. at 3; G-J Ltr.
10 at 1; *see also* Ex. 6 to Jackson Decl. (docket no. 213-6). Stallworth participated in
11 professional development (teacher preparation) activities on August 26 and 27, 2008, but
12 took bereavement leave on August 28, 2008. Stallworth Decl. at 3; G-J Ltr. at 1. On
13 September 2, 2008, Stallworth did not report to work. G-J Ltr. at 1. Stallworth contends
14 that, prior to this first day of school, she had again requested a part-time assignment, but
15 was advised that the Highland Park position was full time. Stallworth Decl. at 3.

16       On September 4, 2008, the District sent Stallworth a letter directing her to report
17 to work or face progressive discipline for job abandonment and/or unauthorized leave.
18 G-J Ltr. at 1; *see* Stallworth Decl. at 3 (describing the letter from Labor and Employee
19 Relations Manager Misa Garmoe). On September 9, 2008, Stallworth met with Garmoe,
20 Human Resource Senior Analyst Sue Means, and union representative Ben Ibale. G-J
21 Ltr. at 2. Ibale suggested that Stallworth be permitted to take an additional year of part-
22 time leave, and Means initiated the process of identifying a part-time certificated position

23

for Stallworth. G-J Ltr. at 2. During this period, Means learned of Stallworth's paid internship with LWSD. Id.

On October 14, 2008, Garmoe sent Stallworth a letter notifying her that Garmoe intended to recommend termination based on job abandonment, unauthorized leave, and violation of the Code of Professional Conduct for Education Practitioners.[2] Id. On October 21, 2008, Stallworth met again with Garmoe, Means, and Ibale. Id. During the meeting, Stallworth attempted to clarify that she did not perform all 1200 required hours of her internship during the 2007-2008 school year at LWSD. Id. The District requested that Stallworth sign a release so that it could obtain a complete log from WSU concerning Stallworth's internship hours. Id. at 3. According to the District, Stallworth refused to provide such release. Id.

The District ultimately concluded that Stallworth "worked and [was] paid under a certifi[cat]ed contract in violation of the terms of [her] leave, the [collective bargaining agreement] and Washington State Law." Id. On December 5, 2008, the Superintendent sent Stallworth a letter indicating that the District was exercising its right to "void, cancel, rescind and/or nullify" the employment contract with Stallworth because it was

---

[2] The Code of Professional Conduct appears in WAC Chapter 181-87. Which provision or provisions the District alleged Stallworth violated is unclear. RCW 28A.405.210, however, provides in relevant part: "No teacher . . . or other certificated employee, holding a position as such with a school district . . . shall be employed except by written order of a majority of the directors of the district at a regular or special meeting thereof, nor unless he or she is the holder of an effective teacher's certificate . . . . No contract shall be offered by any board for the employment of any employee who has previously signed an employment contract for that same term in another school district of the state of Washington unless such employee shall have been released from his or her obligations under such previous contract by the board of directors of the school district to which he or she was obligated. Any contract signed in violation of this provision shall be void."

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 4

renewed for the 2008-2009 school year "by fraud or mistake." G-J Ltr. at 3-4. Stallworth's employment was terminated effective August 29, 2008. Id. at 4.

In this litigation, Stallworth asserts the following claims: (i) failure to accommodate in violation of the Rehabilitation Act of 1973; (ii) discrimination on the basis of age, gender, race, and disability in violation of the WLAD; (iii) retaliation in violation of the WLAD; and (iv) defamation. In response to the District's motion for summary judgment, Stallworth has presented no evidence to support her claims of discrimination on the basis of age or gender and retaliation. Indeed the crux of her grievance with the District is that she was not afforded reasonable accommodations and that "non-Black employees with medical conditions are afforded reasonable accommodations for their disabilities." Stallworth Decl. at 5. Thus, the Court GRANTS defendant's motion for summary judgment as to Stallworth's claims of discrimination on the basis of age or gender and retaliation, and DISMISSES such claims with prejudice. Stallworth's remaining claims, namely failure to accommodate in violation of the Rehabilitation Act, discrimination on the basis of race and/or disability, and defamation, are addressed in the discussion section of this Order.

B.  **Audrey Weaver**

According to the Third Amended Complaint, Audrey Weaver is a black woman over 40 years of age, who worked for the District as a security specialist for approximately twenty years. Third Am. Compl. at ¶¶ 10.2 & 10.3 (docket no. 132). In the fall of 2006, Weaver sought mental health treatment through the District's Employee Assistance Program. Id. at ¶ 10.4. Weaver was diagnosed and treated for an anxiety disorder. See

McClung Report at 3, Ex. G to Farza Decl. (docket no. 262-1); <u>see also</u> Exs. 1-4 to Garmoe Decl. (docket no. 222-1). The District concedes that Weaver is a qualified individual with a disability or handicap within the meaning of the Rehabilitation Act. Motion at 10 (docket no. 250). At the time Weaver became disabled, she was working at Chief Sealth High School ("Chief Sealth").

On September 11, 2007, Weaver's treating psychiatrist recommended a 30-day leave of absence. Ex. 1 to Garmoe Decl. On October 2, 2007, and on November 1, 2007, Weaver's treating mental health counselor recommended extending the leave, first for another 30 days and then until the end of 2007. Ex. 2 & 3 to Garmoe Decl. On December 11, 2007, Weaver's counselor indicated that Weaver was "functioning better" and that Weaver felt she was capable of returning to work. Ex. 4 to Garmoe Decl. In light of Weaver's concerns about the loss of wages and benefits, the counselor approved Weaver's return to work. <u>Id.</u>

In February 2008, Weaver made a written request for disability accommodation. <u>See</u> Ex. 5 to Garmoe Decl. She asked to be "allowed to remain in a secluded place and take [her] medicine" to regain her composure after a panic attack, and to be "allowed to keep [her] necessary medicines on [her]." <u>Id.</u> She also requested a 30-40 minute break after the second lunch period, when students have returned to class, to regain her energy in time for the sixth period. <u>Id.</u> Whether she intended for this break to be her regular lunch break or an additional break is unclear. Finally, she indicated her intent to request a transfer to the "north-end" for the next school year. <u>Id.</u>

On April 9, 2008, Weaver missed a work meeting, and on the following day, April 10, 2008, she was placed on administrative leave with pay. <u>See</u> Exs. 6 & 7 to Garmoe Decl. On May 6, 2008, Weaver submitted to a "fitness-for-duty" evaluation by forensic psychiatrist Mark R. McClung, M.D., P.C. Exs. 8 & 9 to Garmoe Decl. Dr. McClung, who performed the evaluation at the District's request, observed that Weaver had negative feelings about John Boyd, then Principal at Chief Sealth, and indicated that Weaver "would like to be accommodated for her problems with the principal by being transferred to a different school." McClung Report at 1-2, Ex. G to Farza Decl. (docket no. 262-1). Dr. McClung opined that Weaver's anxiety could be accommodated by (i) allowing her to take brief, unscheduled breaks, for up to 30 minutes per day, which would permit her to leave her duty station and calm herself, and (ii) having other security staff available for back-up during times when she experiences anxiety symptoms. <u>Id.</u> at 3-4. Dr. McClung also suggested that Weaver might benefit from mediated discussions with Principal Boyd to attempt to resolve their conflicts and/or supervision by the vice-principal instead of the principal. <u>Id.</u> at 4. Dr. McClung further concluded that, because Weaver's "anxiety attacks are not 'caused' by the presence of the staff with whom she's disgruntled," Weaver did not "require the accommodation of a transfer to another school." <u>Id.</u> at 3.

On May 13, 2008, the District indicated that it would provide the following accommodations:

- Weaver could "take brief unscheduled breaks for up to 30 minutes per day" provided that Weaver advised Assistant Principal Angie Thomas

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 7

- (or Principal Boyd) of the need to invoke this accommodation, at which time Thomas (or Boyd) would identify a private space for Weaver's use;

- Weaver could "carry medication for [her] anxiety disorder with [her] at school," but must refrain from leaving the medication "in a place that could be accessed by students"; and

- Weaver could take her regular 30-minute lunch break after 12:25 p.m. (after the second lunch period) but would be expected to provide assistance in the event of an emergency; she would be permitted to resume her break after the emergency abated.

Ex. 10 to Garmoe Decl. The District also arranged for Catherine Erickson, manager of the Employee Assistance Program ("EAP"), to facilitate a return-to-work meeting between Weaver and Boyd on May 19, 2008. *Id.* This meeting appears to have occurred as scheduled, and some progress was made, including Principal Boyd's agreement to a transfer if Weaver's manager approved of one. Ex. D to Farza Decl. (docket no. 262-1 at 17). On May 20, 2008, however, Weaver called the Safety and Security Department to indicate that she could not report to work because of a "mental breakdown." Ex. 11 to Garmoe Decl.

On May 21, 2008, Weaver's treating psychiatrist recommended that Weaver be transferred to a different school. Ex. 12 to Garmoe Decl. On June 5, 2008, the District indicated in a letter to David Westberg, Business Manager for the International Union of Operating Engineers, Local No. 609, that "Ms. Weaver's request for a change in work site as an accommodation to her anxiety disorder was considered and rejected." Ex. 13 to Garmoe Decl. On September 1, 2008, Weaver's mental health counselor released her to return to work. Ex. 14 to Garmoe Decl.

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 8

On September 12, 2008, Weaver signed a pre-litigation notice of tort claim addressed to Pegi McEvoy, Safety and Security Manager. Ex. 1 to Jackson Decl. (docket no. 221-1). In the notice, which was on the letterhead of previous counsel Brenda J. Little, Weaver indicates her belief that she was constructively discharged as a result of the District's failure to "acknowledge [her] debilitating mental illness," making the working conditions so intolerable that she was forced to resign. Id. The District responded to this notice by letter dated September 26, 2008. Ex. 16 to Garmoe Decl. In its response, the District explained that, because Weaver did not complete an Employee Leave Request Form, the District was unable to obtain current medical information from Weaver's health care providers, and therefore had "no choice but to consider [her] position abandoned and to accept [her] resignation." Id.

On October 16, 2008, Human Resources Manager Misa Garmoe sent Weaver a letter indicating that she was contemplating terminating Weaver's employment for failing to report to work since September 10, 2008. Ex. 15 to Garmoe Decl. Garmoe also referenced Weaver's lack of response to the letter dated September 26, 2008, and Weaver's report to other District personnel that she had secured employment with the City of Seattle. Id. Garmoe invited Weaver to meet on October 23, 2008, to discuss the situation. Id. On October 23, 2008, when Weaver failed to appear for the scheduled meeting, Garmoe sent Weaver a letter discharging her. Id.

In this litigation, Weaver asserts the following claims: (i) failure to accommodate in violation of the Rehabilitation Act of 1973; (ii) discrimination on the basis of race and disability in violation of the WLAD; (iii) retaliation in violation of the WLAD; and

(iv) defamation. In response to the District's motion for summary judgment,[3] Weaver has presented no evidence to support her claim of retaliation,[4] and the Court GRANTS defendant's motion for summary judgment as to such claim. Weaver's retaliation claim is DISMISSED with prejudice. Her other claims are addressed in the discussion section of this Order.

**Discussion**

A.	**Standard for Summary Judgment**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue

---

[3] The District has objected to Exhibits A, B, and F, and portions of Exhibit D to the Declaration of Oliver Farza, which was filed in support of Weaver's opposition to the District's motion for summary judgment. *See* Reply at 4 (docket no. 263). Exhibit A is a signed statement by Principal Boyd, Exhibits B and F consist of an e-mail and several letters by other employees of the District, and Exhibit D contains notes kept by EAP Manager Erickson. The Court presumes that, if the authors of these documents were called as witnesses, they would testify consistently with their respective writings, which appear to be based on personal knowledge. The Court has therefore considered the materials contained in Exhibits A, B, D, and F to the Farza declaration. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

[4] In Weaver's response brief, counsel argues that Weaver was retaliated against for speaking against the proposed merger or "co-location" of Chief Sealth and Denny Middle School. According to counsel, Weaver raised concerns about the potential for inappropriate sexual contact between high school and middle school students if the schools were situated in close proximity. Counsel's assertions (and his representations about deposition testimony) are not evidence, and the Court has considered counsel's remarks only for the purpose of understanding the nature of Weaver's retaliation claim. Weaver's retaliation claim is not premised on any complaint she made about discriminatory treatment, which would be actionable under the WLAD, but is instead based on Weaver's opposition to the District's plan to combine the high school and middle school campuses. Weaver, however, has not pleaded any claim for retaliation relating to the exercise of First Amendment rights, nor could she in these circumstances, given that her expressions were made within the scope of her employment as a security specialist. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Eng v. Cooley*, 552 F.3d 1062, 1070-71 (9th Cir. 2009) (a public employee claiming a First Amendment violation must prove *inter alia* that he or she spoke outside his or her capacity as a governmental employee); *see also Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006).

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 10

of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the adverse party must present "affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn.  *Id.* at 255, 257.  When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted.  *See* *Beard v. Banks*, 548 U.S. 521, 529 (2006) (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

**B.      Rehabilitation Act**

      **1.      Chalice Stallworth**

A person with a disability may present Rehabilitation Act claims under two different theories:  (i) disparate treatment; and (ii) failure to accommodate.  In moving for summary judgment on Stallworth's Rehabilitation Act claim, the District misinterprets her claim as alleging disparate treatment rather than failure to accommodate.  *Compare* Motion at 11 (docket no. 250) (reciting the standard for disparate treatment claims) *with* Third Am. Compl. at ¶¶ 13.4 & 13.4[sic] (docket no. 132-1) ("plaintiffs sought reasonable accommodations" and "[f]or reasons not known, agents of Defendant failed to provide these or other reasonable accommodations"); *see generally* *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007) (to state a prima facie case of

disparate treatment under the Rehabilitation Act, a plaintiff must demonstrate that "(1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability"). The District has therefore not addressed the merits of Stallworth's failure to accommodate claim.

Under the Rehabilitation Act, the burden is on the plaintiff to prove he or she is a "qualified handicapped individual" and to make a "facial showing that reasonable accommodation is possible." Buckingham v. United States, 998 F.2d 735, 739-40 (9th Cir. 1993). If the plaintiff makes the requisite showing, the burden shifts to the employer to demonstrate that the requested accommodation would impose "an undue hardship" on its operations. See id.; see also 28 C.F.R. § 42.511(a). The District contends that it had a legitimate, non-discriminatory reason for discharging Stallworth, namely violation of state law, the collective bargaining agreement, and/or the applicable professional code by working for another school district while under contract and on health leave. Stallworth, however, alleges that, even before she secured the internship with LWSD, the District denied her request for an accommodation of part-time work. The District has provided no explanation for such denial, and a reasonable inference must be drawn in Stallworth's favor, as the non-moving party, that providing her a part-time position was "possible."

Based on the current record, the Court concludes that Stallworth has presented a triable issue as to whether she was disabled and otherwise qualified, and whether the accommodation she requested was reasonable. The Court therefore DENIES defendant's motion for summary judgment as to Stallworth's failure-to-accommodate claim under the Rehabilitation Act.

## 2. **Audrey Weaver**

With regard to Weaver's Rehabilitation Act claim, the District likewise misapplies the disparate treatment analysis, arguing that Weaver has failed to demonstrate she suffered discrimination solely because of her disability[5] and that Weaver has presented no evidence tending to show the District's reason for discharging her, namely for failure to report to work, was pretextual. Weaver's claim, however, as stated in her pre-litigation notice and in the operative pleading, is that she was denied requested accommodations, particularly transfer to another school. Because the District has conceded that Weaver was a "qualified handicapped individual," Weaver's only burden at this juncture is to show that her requested accommodations were reasonable and possible. *Buckingham*, 998 F.2d at 740.

Weaver's counsel has represented, and the District has not disputed, that Weaver was transferred to Madrona Middle School in September 2008. Response at 8 (docket no. 262); <u>see</u> Reply at 4 (docket no. 263). The record reflects no reason why this transfer or a different reassignment could not have occurred earlier, closer to the time when Weaver requested the accommodation, and the Court concludes that Weaver has made a

---

[5] The District contends Weaver's claim that she was treated less favorably than non-minority disabled individuals is not cognizable under the Rehabilitation Act, which requires that the alleged discrimination be "solely by reason of . . . disability." 29 U.S.C. § 794(a). The Rehabilitation Act is indeed narrower than the ADA, and does not encompass mixed-motive scenarios. <u>See</u> <u>Head v. Glacier Nw. Inc.</u>, 413 F.3d 1053, 1065 & n.63 (9th Cir. 2005) (adopting the "motivating factor" standard for claims under the ADA, which was intended "to reach beyond the Rehabilitation Act to cover situations in which discrimination on the basis of disability is one factor, but not the only factor, motivating an adverse employment action" (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir. 2000))). Neither Stallworth nor Weaver may pursue under the Rehabilitation Act the theory that the District gave preferential treatment to non-minority disabled persons.

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 13

sufficient showing to shift the burden to the District to demonstrate that a transfer would have imposed "an undue hardship" on its operations. See Buckingham, 998 F.2d at 740. In connection with its motion for summary judgment, the District has not even addressed this subject, and the Court therefore DENIES defendant's motion as to Weaver's failure-to-accommodate claim under the Rehabilitation Act.

C.  **Washington Law Against Discrimination**

    1.  **Disparate Treatment**

Under the WLAD, in the absence of direct evidence of discrimination, courts employ the three-part burden-shifting framework first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Hines v. Todd Pac. Shipyards Corp., 127 Wn. App. 356, 370-71, 112 P.3d 522 (2005). To present a prima facie case of disparate treatment, a plaintiff must prove that (i) he or she is a member of a protected class, (ii) he or she was treated less favorably than a similarly situated non-protected employee, and (iii) the non-protected employee was doing the same work. See Clarke v. Office of the Attorney Gen., 133 Wn. App. 767, 788-89, 138 P.3d 144 (2006). Only if a plaintiff presents sufficient evidence of a prima facie case does the burden shift to the employer to provide evidence of legitimate, nondiscriminatory reasons for its actions. Hines, 127 Wn. App. at 371.

The final burden rests on the plaintiff to produce evidence that the asserted reasons are merely a pretext for discrimination. Id. To establish pretext, the plaintiff must put forward evidence indicating that the articulated nondiscriminatory reasons are "unworthy of belief." Id. at 372. "Speculation and belief are insufficient to create a fact issue as to

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 14

pretext.  Nor can pretext be established by merely conclusory statements of a plaintiff who feels that he has been discriminated against." *Id.*  Moreover, summary judgment may be granted in favor of an employer even when the employee has created a weak issue of fact concerning pretext, if abundant, uncontroverted, independent evidence indicates that no discrimination occurred. *E.g.*, *Tyner v. Wash.*, 137 Wn. App. 545, 564, 154 P.3d 920 (2007).

In this case, neither Stallworth nor Weaver present the evidence required to support a disparate treatment theory, whether based solely on race or disability or on a combination of race and disability.  Neither plaintiff has identified even a single comparator, *i.e.*, a similarly situated non-protected employee who was treated more favorably, and neither plaintiff has proffered any statistical evidence indicating that the District treated non-minority, non-disabled, or non-minority disabled persons differently than their minority and/or disabled counterparts.  Neither Stallworth nor Weaver has presented a prima facie case of disparate treatment.  In contrast, the District has articulated legitimate, non-discriminatory reasons for discharge, namely Stallworth's improper performance of a certificated contract with another school district while on health leave and Weaver's abandonment of her position, and neither plaintiff has put forward non-speculative evidence indicating that such reasons are pretextual.  The Court therefore GRANTS defendant's motion for summary judgment as to Stallworth's and Weaver's WLAD claims of disparate treatment based on race and/or disability and DISMISSES such claims with prejudice.

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 15

### 2. Failure to Accommodate

A failure-to-accommodate claim under the WLAD is analyzed under a standard similar to the one applied to Rehabilitation Act claims. Washington courts engage in two inquiries: (i) whether the employee was disabled within the meaning of the WLAD; and (ii) whether the employer met its affirmative obligation to reasonably accommodate the disability. *See Delaplaine v. United Airlines, Inc.*, 518 F. Supp. 2d 1275, 1277 (W.D. Wash. 2007) (citing *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 640, 9 P.3d 787 (2000)). For the same reasons that Stallworth and Weaver have survived the District's motion for summary judgment as to their Rehabilitation Act claims, the Court concludes that triable issues exist as to their failure-to-accommodate claims under the WLAD. With respect to Stallworth, however, the Court must separately analyze the District's argument that her state law claims are barred because she did not comply with RCW 4.96.020.

### D. Pre-Litigation Notice of Claims

RCW 4.96.020 requires that any claim for damages against a local governmental entity, arising out of tortious conduct, be presented, at least 60 days prior to filing suit, and within the applicable period of limitations for such claim, to the agent appointed to receive such claim. In 2009, RCW 4.96.020 was amended to incorporate a "substantial compliance" standard with respect to both the content of claim notices and the procedures for presenting them; the Court has previously held that the 2009 amendment applies retroactively. *Bell v. City of Tukwila*, 2011 WL 1045586 (W.D. Wash. Mar. 21, 2011).

The District argues that Chalice Stallworth's tort claim form was not timely submitted.[6] Stallworth undisputedly failed to present the requisite notice to the District before commencing this action. Rather, in October 2010, over a year and a half after initiating this lawsuit, Stallworth submitted to the District a document in the form outlined in RCW 4.96.020. The District argues that presenting the tort claim form after the litigation has begun does not constitute "substantial compliance" because such sequence of events gave no advance notice to the District to enable it to investigate the claim and potentially resolve it before being sued, which is the underlying purpose of RCW 4.96.020. See Bell, 2011 WL 1045586 at *1. Stallworth's October 2010 notice, however, was presented before the Third Amended Complaint was filed.

All plaintiffs were originally represented in this matter by Brenda Little. The Court removed Little from this case after she failed *inter alia* to attend Stallworth's deposition, which was noted for September 10, 2009, and for which Stallworth herself appeared. See Order (docket no. 59); Order (docket no. 47); see also Jackson Decl. at ¶¶ 2 & 3 and Exs. 1 & 2 (docket no. 42). After Little's removal as counsel of record, several plaintiffs sought voluntary dismissal of their claims without prejudice for the purpose of refiling their suits and restoring Little as their attorney; the Court rejected these attempts to circumvent its Order. See Minute Order (docket no. 65); see also Minute Order (docket no. 74). Stallworth was not one of the plaintiffs who moved to dismiss without prejudice after Little's removal, but had she done so, her request would

---

[6] The District does not challenge the sufficiency of Audrey Weaver's pre-litigation notice.

ORDER RE: PLAINTIFFS CHALICE STALLWORTH and AUDREY WEAVER - 17

likewise have been denied, even if the reason for such dismissal was to rectify the lack of compliance with RCW 4.96.020.  In light of the complications resulting from Little's involvement in this matter, with respect to which Stallworth is not at fault, and the fact that the October 22, 2010 notice was presented before the Third Amended Complaint was filed, the Court concludes there was sufficient compliance and the defendant's motion for summary judgment on the basis of her failure to present a pre-litigation notice of claim is DENIED.

### E. Defamation

In moving for summary judgment with respect to Stallworth's defamation claim, the District relied solely on her noncompliance with RCW 4.96.020.  As to Weaver's defamation claim, the District appears not to have moved for summary judgment at all.  The parties have therefore not addressed the merits of the defamation claims.[7]  Thus, defendant's motion for summary judgment is DENIED as to plaintiffs' defamation claims.

### Conclusion

Defendant's motion for summary judgment, docket no. 250, is GRANTED in part and DENIED in part as to the claims of plaintiffs Chalice Stallworth and Audrey Weaver.

---

[7] To state a prima facie case of defamation, a private plaintiff must show (i) the statement at issue is false or leaves a false impression, (ii) the statement was contained in an unprivileged publication to a third party, (iii) the publisher had fault amounting at least to negligence, and (iv) damages from the publication. *See Mark v. Seattle Times*, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981) (citing Restatement (Second) of Torts § 558 (1977)).  In their trial briefs the parties are directed to address the basis for the defamation claims and plaintiffs should identify any written documents that may give rise to such claims.  In addition, the parties are directed to address each of the elements of this claim and specifically whether letters of termination directed to a plaintiff would constitute an unprivileged publication to a third party under Washington law.

Stallworth's claims under the WLAD for disparate treatment on the basis of age, gender, race, and/or disability and for retaliation are DISMISSED with prejudice. Weaver's claims under the WLAD for disparate treatment on the basis of race and/or disability and for retaliation are DISMISSED with prejudice. Defendant's motion is otherwise DENIED. Stallworth and Weaver each have the following claims remaining for trial: (i) failure to accommodate in violation of the Rehabilitation Act and/or the WLAD; and (ii) defamation.

The Clerk is DIRECTED to send copies of this Order to counsel for the District and counsel for Chalice Stallworth and Audrey Weaver.

IT IS SO ORDERED.

DATED this 7th day of February, 2013.

THOMAS S. ZILLY
United States District Judge