UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHALICE STALLWORTH; AUDREY WEAVER; JACQUES JOHNSON; and MARCUS PERKINS,<br><br>Plaintiffs,<br><br>v.<br><br>SEATTLE SCHOOL DISTRICT NO. 1,<br><br>Defendants. | C09-203 TSZ<br><br>ORDER RE: PLAINTIFFS JACQUES JOHNSON and MARCUS PERKINS |

THIS MATTER comes before the Court on defendant's motion for summary judgment, docket no. 250. This Order relates solely to the portion of defendant's motion seeking summary judgment as to the claims of plaintiffs Jacques Johnson and Marcus Perkins. By oral ruling on February 22, 2013, the Court granted defendant's motion for summary judgment as to Johnson and Perkins. Minutes (docket no. 286). This Order explains the Court's reasoning.

**Background**

**A.**  **Jacques Johnson**

According to the Third Amended Complaint, Jacques Johnson is currently employed by defendant Seattle School District No. 1 (the "District") as a security

ORDER RE: PLAINTIFFS JACQUES JOHNSON and MARCUS PERKINS - 1

specialist.  Third Am. Compl. at ¶¶ 1.8 & 11.2 (docket nos. 132 & 132-1).  Johnson asserts that he has "severe respiratory ailments" constituting a "disability" within the meaning of federal and state law.  *Id.* at ¶ 11.5.  In November 2008, Johnson's physician indicated that Johnson suffers from "seasonal allergies" and recommended that Johnson's outdoor exposure be limited.  Ex. 3 to Jackson Decl. (docket no. 221-1).  The District responded as follows to Johnson's request for accommodation:

> As a Security Specialist at a high school, one of the essential functions of your job is to work in all types of weather conditions.  Since working outside is a major function of your job, it would be difficult for the District to limit your exposure to outdoor allergens.  Based on the information received from your doctor thus far, it does not appear that the District can reasonably accommodate your request to stay indoors as much as possible.  Because this is an interactive process if your doctor has additional information he can provide, the District will work with him on other options and or suggestions he may have in reasonably accommodating your disability.

Ex. 4 to Jackson Decl. (docket no. 221-1).  When asked in his deposition whether his symptoms interfered with his ability to perform as a security specialist, Johnson replied, "I can perform the job."  Johnson Dep. at 15:6-9, Ex. 5 to Jackson Decl. (docket no. 221-1).

In the Third Amended Complaint, Johnson also alleges that he was transferred to Meany Middle School in retaliation for writing a letter in 2002 to the Chief of Police and the Mayor on the subject of drugs in the schools.  Third Am. Compl. at ¶ 11.4 (docket no. 132-1).  He indicates that he was reprimanded, sometime after September 2008, for sending an e-mail to the Superintendent and members of the School Board, praising the staff of Cleveland High School for their prompt response to an incident, because such

communication was not within the chain of command. Id. at ¶ 11.7. He further contends that, after being assigned to Ballard High School in October 2008, he experienced retaliation and ostracism because of his communications with District personnel about the treatment of black students and other issues involving race. Id. at ¶ 11.9.

B.  **Marcus Perkins**

According to the Third Amended Complaint, Marcus Perkins was employed for over 26 years as a custodian for the District. Third Am. Compl. at ¶¶ 1.9 & 12.2 (docket nos. 132 & 132-1). Perkins asserts that he has a degenerative disc disease rendering him "disabled" within the meaning of federal and state law. Id. at ¶ 12.11. He contends that the District discharged him in January 2009, with knowledge of his hip-replacement surgery scheduled in February 2009, and thereby failed to honor his need for Family Medical Leave Act ("FMLA") benefits[1] and did not provide him reasonable accommodation as required by federal and state law. Id. at ¶¶ 12.7, 12.9, & 12.10-12.12.

**Discussion**

A.  **Failure to Prosecute**

Neither Johnson nor Perkins filed a written response to defendant's motion for summary judgment, and neither plaintiff appeared for the Pretrial Conference held on February 22, 2013. The Court treats Johnson's and Perkin's lack of response to defendant's motion and their failure to appear for the Pretrial Conference as indicating an abandonment of their claims. Dismissal of their claims with prejudice is therefore

---

[1] Perkins, however, makes no claim under the FMLA or specifically 29 U.S.C. § 2617. See Third Am. Compl. (docket nos. 132 & 132-1).

1  warranted under Federal Rule of Civil Procedure 41(b).  In addition, however, the Court
2  addresses the merits of defendant's motion for summary judgment.
3  B.     **Standard for Summary Judgment**
4        The Court shall grant summary judgment if no genuine issue of material fact exists
5  and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
6  The moving party bears the initial burden of demonstrating the absence of a genuine issue
7  of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if
8  it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty
9  Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the
10 adverse party must present "affirmative evidence," which "is to be believed" and from
11 which all "justifiable inferences" are to be favorably drawn.  *Id.* at 255, 257.  When the
12 record, however, taken as a whole, could not lead a rational trier of fact to find for the
13 non-moving party, summary judgment is warranted.  *See Beard v. Banks*, 548 U.S. 521,
14 529 (2006) (Rule 56 "mandates the entry of summary judgment, after adequate time for
15 discovery and upon motion, against a party who fails to make a showing sufficient to
16 establish the existence of an element essential to that party's case, and on which that
17 party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).
18 C.     **Jacques Johnson**
19        Johnson makes the following claims:  (i) violation of the Rehabilitation Act of
20 1973; (ii) discrimination on the basis of race and disability in violation of the Washington
21
22
23

1  Law Against Discrimination (the "WLAD"); and (iii) retaliation in violation of the

2  WLAD.[2]

3    Johnson's Rehabilitation Act claim is unsupported by the record.  Johnson alleges

4  a failure to accommodate, as opposed to disparate treatment, and as to such claim,

5  Johnson bears the burden of proving that he is a qualified individual with a disability.

6  <u>Buckingham v. United States</u>, 998 F.2d 735, 739-40 (9th Cir. 1993).  Johnson, however,

7  has provided no evidence to support his assertion that he is "disabled" within the meaning

8  of the Rehabilitation Act, which employs the same standards as the Americans with

9  Disabilities Act of 1990 (the "ADA"), and/or the WLAD, which contains a broader

10 definition than the ADA.  <u>See</u> <u>Delaplaine v. United Airlines, Inc.</u>, 518 F. Supp. 2d 1275,

11 1278 (W.D. Wash. 2007).  Johnson makes no showing that his seasonal allergies

12 "substantially limit" a major life activity, as required under the ADA, or "substantially

13 limit" his ability to perform his job, as required under the WLAD, to qualify as

---

[2] Johnson makes no claim, pursuant to 42 U.S.C. § 1983 or otherwise, for retaliation relating to the exercise of First Amendment rights.  Moreover, with regard to Johnson's transfer to Meany Middle School allegedly in retaliation for his 2002 letter to the Chief of Police and the Mayor, any such § 1983 claim would be barred by the three-year statute of limitations.  <u>See</u> <u>RK Ventures, Inc. v. City of Seattle</u>, 307 F.3d 1045, 1058 (9th Cir. 2002).  As for Johnson's reprimand for communicating with the Superintendent and members of the School Board and the alleged ostracism resulting from his statements about the treatment of black students, any § 1983 claim would lack merit.  A public employee claiming a First Amendment violation must establish that (i) he or she spoke on a matter of public concern; (ii) he or she spoke outside his or her capacity as a government employee; and (iii) his or her speech was a substantial or motivating factor in an adverse employment action.  <u>See</u> <u>Eng v. Cooley</u>, 552 F.3d 1062, 1070-71 (9th Cir. 2009).  Johnson's praise of how Cleveland High School staff responded to an incident does not rise to the level of a matter of public concern, and was not clearly outside the scope of his capacity as a security specialist, even though his manner of communicating such praise was deemed inappropriate.  Likewise, Johnson's comments about the treatment of black students and other matters involving race were not outside his capacity as a security specialist, particularly given that Johnson was assigned to a "Superintendent-approved committee on these issues."  Third Am. Compl. at ¶ 11.9 (docket no. 132-1).

ORDER RE:  PLAINTIFFS JACQUES JOHNSON and MARCUS PERKINS - 5

1  "disabled."  Indeed, Johnson has conceded that his seasonal allergies do not interfere with
2  his ability to perform his job.
3      In contrast, the District has indicated that the requested accommodation would
4  impose "an undue hardship" on its operations.  See Buckingham, 998 F.2d at 740-41.
5  The District has submitted the position description for School Security At-Risk Tactical
6  Specialist, the position for which Johnson applied and which he was awarded in
7  September 2008.  See Third Am. Compl. at ¶ 11.7 (docket no. 132-1).  The position
8  description outlines the following working conditions, in relevant part:

> [M]ay be required in some positions to have sufficient dexterity, mobility, physical ability and stamina, to restrain students and staff in accordance with established guidelines, sufficient mobility to respond to student needs and safety requiring moderate physical effort as a part of regular work routine, such as frequent standing, . . . constant walking, . . . guiding and/or carrying materials or equipment up to 50 pounds; riding a bike; . . . required to travel between sites; work outside in all weather conditions . . . .

13  Ex. 2 to Jackson Decl. (docket no. 221-1 at 7).  The Court concludes, as a matter of law,
14  that working predominantly indoors is inconsistent with Johnson's job description, and
15  that the requested accommodation would impose "an undue hardship," assuming Johnson
16  remained a School Security At-Risk Tactical Specialist.  Thus, Johnson's Rehabilitation
17  Act claim is DISMISSED with prejudice.
18      To the extent Johnson's discrimination claim under the WLAD is based on
19  disability, it also fails because Johnson has not established that he is disabled.  With
20  respect to his claim of discrimination on the basis of race, Johnson has not presented a
21  prima facie case, which requires proof that (i) he is a member of a protected class, (ii) he
22  was treated less favorably than a similarly situated non-protected employee, and (iii) the
23

ORDER RE:  PLAINTIFFS JACQUES JOHNSON and MARCUS PERKINS - 6

non-protected employee was doing the same work.  See Clarke v. Office of the Attorney Gen., 133 Wn. App. 767, 788-89, 138 P.3d 144 (2006).  Johnson has not identified a single comparator or proffered any evidence indicating that the District treated similarly situated non-minority individuals more favorably than Johnson.  Johnson's discrimination claim under the WLAD is also DISMISSED with prejudice.

Johnson's allegation that he experienced ostracism and was denied opportunities to serve as the security representative for administrative meetings and to receive other campus-wide security responsibilities because of statements he made concerning "race equity" at least falls with the rubric of a retaliation claim under the WLAD.  Johnson, however, has not provided sufficient detail to survive the District's motion for summary judgment.  To state a prima facie case of retaliation under the WLAD, a plaintiff must show that (i) he or she engaged in protected activity; (ii) he or she suffered an adverse employment action; and (iii) a causal link exists between the protected activity and the adverse employment action.  Daniel v. Boeing Co., 764 F. Supp. 2d 1233, 1245 (W.D. Wash. 2011).  Temporal proximity between the protected activity and the adverse employment action is one factor tending to show a causal link.  Id.

Johnson has supplied no details concerning his alleged protected activity.  He has not described what was said, to whom, in what context, or when.  In addition, he has offered no evidence of a causal link between his communications and the denial of opportunities.  He does not indicate that the events occurred in sequence or were close in time, and he does not explain what efforts he made to secure the opportunities at issue or whether the opportunities were provided to others with less seniority or qualifications.

ORDER RE:  PLAINTIFFS JACQUES JOHNSON and MARCUS PERKINS - 7

Given the dearth of evidence in the record, Johnson's retaliation claim under the WLAD is likewise DISMISSED with prejudice.

D.   **Marcus Perkins**

Perkins makes the following claims:  (i) violation of the Rehabilitation Act; (ii) discrimination on the basis of disability in violation of the WLAD; and (iii) retaliation in violation of the WLAD.  Perkins makes no claims involving racial animus.

Like Johnson, Perkins alleges under the Rehabilitation Act only a failure to accommodate, and not disparate treatment.  With respect to his failure-to-accommodate claim, Perkins has the burden to prove he is a qualified individual with a disability. *Buckingham*, 998 F.2d at 739-40.  Perkins, however, has provided no evidence to support his assertion that he is "disabled" within the meaning of the Rehabilitation Act.  The fact that hip-replacement surgery was recommended, scheduled, or performed does not prove that Perkins was "substantially limited" in a major life activity, as required under the ADA, or "substantially limited" in the ability to perform his job, as required under the WLAD to qualify as "disabled."  *See Delaplaine*, 518 F. Supp. 2d at 1278.  Perkins's Rehabilitation Act claim is therefore DISMISSED with prejudice.

For the same reason, Perkins's discrimination claim under the WLAD fails.  To present a prima facie case of disparate treatment, a plaintiff must prove that (i) he or she is a member of a protected class, (ii) he or she was treated less favorably than a similarly situated non-protected employee, and (iii) the non-protected employee was doing the same work.  *See Clarke*, 133 Wn. App. at 788-89.  Perkins fails to show he is a member of a protected class because he presents no evidence that he is "disabled" within the

ORDER RE:  PLAINTIFFS JACQUES JOHNSON and MARCUS PERKINS - 8

meaning of the WLAD. Moreover, he has not identified a single comparator or proffered any evidence indicating that the District treated similarly situated non-disabled individuals more favorably than Perkins.

In contrast, the District has articulated legitimate, non-discriminatory reasons for discharge, namely excessive absenteeism and failure to follow written directives regarding reporting and documenting absences. According to a letter authored by Employee/Labor Relations Manager Jeannette Bliss, Perkins missed work without authorization on eight days in November 2008, four days in December 2008, and three days in January 2009. Ex. 1 to Jackson Decl. (docket nos. 251-1 & 254-1). In her letter, Bliss acknowledged that she received from Perkins a note from his physician indicating that surgery was scheduled in February 2009, but Bliss observed that such note did not excuse the prior absences. Bliss indicated in her letter that Perkins's "failure to follow written agreements and to come to work in a consistent manner has led [her] to the final step in the progressive discipline process," _id._, and Perkins was terminated effective January 12, 2009. Perkins presents no evidence that the reasons for discharge stated in Bliss's letter are pretextual, and Perkins's discrimination claim under the WLAD is DISMISSED with prejudice.

Perkins's retaliation claim is equally unsupported. To state a prima facie case of retaliation under the WLAD, a plaintiff must show that (i) he or she engaged in protected activity; (ii) he or she suffered an adverse employment action; and (iii) a causal link exists between the protected activity and the adverse employment action. _Daniel_, 764 F. Supp. 2d at 1245. Perkins has not identified any protected activity in which he engaged,

ORDER RE: PLAINTIFFS JACQUES JOHNSON and MARCUS PERKINS - 9

and he has presented no evidence that his termination was close in time or causally linked to any protected activity.  Perkins's retaliation claim is DISMISSED with prejudice.

**Conclusion**

For the foregoing reasons, defendant's motion for summary judgment, docket no. 250, is GRANTED with regard to the claims of plaintiffs Jacques Johnson and Marcus Perkins, and all of Johnson's and Perkins's claims are DISMISSED with prejudice.  The Court DECLINES to make the finding required by Federal Rule of Civil Procedure 54(b), and will enter a final judgment after all claims in this matter have been resolved.

Dated this 6th day of March, 2013.

*[signature]*

THOMAS S. ZILLY
United States District Judge